## Joseph W. Gordon *vs*. Registry of Motor Vehicles.

No. 08-P-168.

Bristol. December 9, 2008. - August 24, 2009.

Present: Grasso, Katzmann, & Sikora, JJ.

*Practice, Civil,* Summary judgment. *Constitutional Law,* Ex post facto law, Double jeopardy. *Statute,* Construction, Retroactive statute. *Motor Vehicle,* License to operate, Operating under the influence, Ignition interlock device. *License. Due Process of Law,* Retroactive application of statute, License.

This court concluded that G. L. c. 90, § 24½, a provision of "Melanie's Law," St. 2005, c. 122, enacted to protect the public from drunk drivers by requiring individuals with two or more convictions of operating a motor vehicle while under the influence of alcohol who seek a new license or a reinstatement of a license to install an ignition interlock device (IID) in their motor vehicles, did not violate the constitutional prohibition against ex post facto laws, where the legislative scheme and case law considering that scheme supported the conclusion that the IID restriction, with its goal of public safety, was not punitive [50-53]; further, where the purpose and effect of the IID restriction were clearly remedial and civil, the statute could not be said to violate the double jeopardy clause of the Fifth Amendment to the United States Constitution [53-55], and its application to an individual did not impermissibly infringe on substantive due process rights, given that it rationally served the legislative purpose of protecting the public from the danger of drunk driving [55-56].

The application of G. L. c. 90, § 24½, enacted in 2005 to require individuals with two or more prior convictions of operating a motor vehicle while under the influence of alcohol (OUI) who seek a new license or a reinstatement of a license to install an ignition interlock device in their motor vehicles, to an individual who was convicted of a subsequent OUI offense in 2003 and sought a license reinstatement in 2006, did not constitute a retroactive application in violation of the individual's due process rights, where the conduct triggering the statute (i.e., the license reinstatement) occurred after the effective date of the statute. [56-57]

Civil action commenced in the Superior Court Department on March 1, 2006.

The case was heard by *Gary A. Nickerson,* J., on motions for summary judgment.

*Julie A. Rougeau* for the plaintiff.

*Stephen W. Marshalek*, Assistant Attorney General, for the defendant.

KATZMANN, J. In this case, we consider various constitutional challenges to a provision of the law known as "Melanie's Law," St. 2005, c. 122, enacted to protect the public from drunk drivers. We conclude that the provision passes muster.

Joseph W. Gordon filed a complaint for a writ of mandamus, seeking an order that the registry of motor vehicles (RMV) reissue his license without the requirement that he install an ignition interlock device (IID) in accordance with G. L. c. 90, § 24½, a provision of Melanie's Law.[1] Gordon subsequently filed an amended complaint seeking a declaratory judgment, and preliminary and permanent injunctive relief. Gordon asserted that the IID requirement of § 24½ violated his constitutional rights to be free from ex post facto laws and double jeopardy, and that the requirement impermissibly deprived him of his due process rights. Both the RMV and Gordon filed motions for summary judgment. On November 30, 2007, the judge allowed the RMV's motion for summary judgment and denied Gordon's motion for summary judgment. Gordon appealed. We affirm.

*Background.*[2] In 1989, Gordon committed his first offense of operating a motor vehicle while under the influence of alcohol (OUI), in violation of G. L. c. 90, § 24D. That case was continued without a finding. On December 17, 2003, Gordon was convicted of a subsequent OUI. As a result, Gordon received a second-offense alternative disposition. As part of that disposition, Gordon was required to take alcohol education classes and his license was suspended for two years. Subsequently, Gordon requested and received a hardship license from the RMV, which allowed him to operate his vehicle in the daytime hours.

On January 1, 2006, G. L. c. 90, § 24½, went into effect, requiring individuals with two or more OUI convictions (offender) who seek a new license or a reinstatement of a license to install an IID on all vehicles they own, lease, or operate. See

---

[1]At the same time, Gordon also requested, and was later denied, a preliminary injunction.

[2]The underlying facts, which we take from the summary judgment record, are not disputed.

G. L. c. 90, § 24¹/₂.[3] An IID must remain installed for a period of two years, *ibid.*, and the offender bears the cost of installation and maintenance. See 540 Code Mass. Regs. § 25.07 (2006). Once installed on a motor vehicle, the offender must blow into the IID in order to start the vehicle's engine. The IID prevents a vehicle from starting if it detects a blood alcohol concentration level over a preset limit of .02 or 20 mg of alcohol per 100 ml of blood. See G. L. c. 90, § 12(*c*)

Gordon was eligible to apply for his license reinstatement on December 17, 2005. He applied for the reinstatement on January 3, 2006, a few days after G. L. c. 90, § 24¹/₂, went into

---

[3]General Laws c. 90, § 24¹/₂, inserted by St. 2005, c. 122, § 13, provides:

"No person whose license has been suspended in the commonwealth or any other jurisdiction by reason of: an assignment to an alcohol or controlled substance education, treatment or rehabilitation program; or a conviction for violating paragraph (a) of subdivision (1) of section 24, subsection (a) of section 24G, operating a motor vehicle with a percentage by weight of blood alcohol of eight one-hundredths or greater, or while under the influence of intoxicating liquor in violation of subsection (b) of said section 24G, section 24L, section 13¹/₂ of chapter 265, subsection (a) of section 8 of chapter 90B, section 8A or 8B of chapter 90B or, in the case of another jurisdiction, for any like offense, shall be issued a new license or right to operate or have his license or right to operate restored if he has previously been so assigned or convicted, unless a certified ignition interlock device has been installed on each vehicle owned, each vehicle leased and each vehicle operated by that person as a precondition to the issuance of a new license or right to operate or the restoration of such person's license or right to operate. A certified ignition interlock device shall be installed on all vehicles owned, leased and operated by the licensee for a period of 2 years and person restricted by a certified ignition interlock device shall have such device inspected, maintained and monitored in accordance with such regulations as the registrar shall promulgate. The registrar may, after hearing, revoke for an extended period or for life, the license of whoever removes such device or fails to have it inspected, maintained or monitored on at least 2 occasions during the period of the restricted license or right to operate if the licensee has operated or attempted to operate a vehicle with a blood alcohol level that caused the certified ignition interlock device to prohibit a vehicle from starting on at least 2 occasions or that recorded a blood alcohol level in excess of .02 on at least 2 occasions. A person aggrieved by a decision of the registrar pursuant to this section may file an appeal in the superior court of the trial court department. If the court determines that the registrar abused his discretion, the court may vacate the suspension or revocation of a license or right to operate or reduce the period of suspension or revocation as ordered by the registrar."

effect. The RMV informed Gordon that his license would be reinstated only after he demonstrated proof of having installed an IID on his vehicle. The RMV then sent Gordon a letter informing him that his hardship license would also be revoked unless he installed the IID by March 4, 2006. Because Gordon failed to install the IID, his hardship license was revoked as of March 5, 2006.

*Discussion.* 1. *Standard of review.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). In this case, the facts are undisputed; thus, we review the record to determine if either party is entitled to judgment as a matter of law. See *Nelson* v. *Salem State College*, 446 Mass. 525, 530 (2006).

2. *The ex post facto claim.* The United States Supreme Court has held that every law which "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed," is in violation of the ex post facto clause of the United States Constitution.[4] *Calder* v. *Bull*, 3 U.S. (3 Dall.) 386, 390 (1798). This prohibition, however, applies only to statutes that are punitive in nature; civil remedies are not subject to the prohibition against ex post facto laws. See *Commonwealth* v. *Fourteen Thousand Two Hundred Dollars*, 421 Mass. 1, 6 (1995).

Gordon avers that the IID requirement is punitive and it therefore violates his constitutional right to be free from ex post facto laws. We disagree. "Whether a statute was intended to be criminal or civil depends on the Legislature's intent, which is a matter of statutory construction." *Commonwealth* v. *Bruno*, 432 Mass. 489, 500 (2000), quoting from *Kansas* v. *Hendricks*, 521

---

[4]Gordon claims that the IID provision of Melanie's Law, § 24½, as applied to him, violates the ex post facto clauses of both the Federal and State Constitutions. See art. I, § 10, of the United State Constitution; art. 24 of the Massachusetts Constitution. Although our analysis rests on the Federal clause, the result would be the same under the Massachusetts Constitution because we have "treated the ex post facto provisions within the State and Federal Constitutions in identical fashion." See *Santiago* v. *Commonwealth*, 427 Mass. 298, 301, *S.C.*, 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998).

U.S. 346, 361 (1997). If a statute was intended to be civil, then it must be interpreted as such unless the "party challenging the statute provides 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' " *Kansas, supra,* quoting from *United States* v. *Ward,* 448 U.S. 242, 248-249 (1980).

In support of his argument, Gordon relies on the statute's emergency preamble,[5] which states: "Whereas, [t]he deferred operation of this act would tend to defeat its purpose, which is to increase penalties for drunk drivers in the Commonwealth, therefore it is hereby declared to be an emergency law, necessary for the immediate preservation of the public safety." St. 2005, c. 122, preamble. General statements in the preamble of a statute do not control its specific provisions. See *Milk Control Bd.* v. *Gosselin's Dairy,* 301 Mass. 174, 179-180 (1938). Although the preamble refers to "penalties," that term does not necessarily render the entire statute penal. See *United States* v. *One Assortment of 89 Firearms,* 465 U.S. 354, 364 n.6 (1984) (statute labeled "penalties" included provisions with remedial purpose). In fact, the preamble goes on to state that it is aimed at the "preservation of public safety" — a purpose that is remedial. See *Luk* v. *Commonwealth,* 421 Mass. 415, 423-430 (1995); *Leduc* v. *Commonwealth,* 421 Mass. 433, 436 (1995), cert. denied, 519 U.S. 827 (1996); *Bruno, supra.* Thus, while some of the provisions in Melanie's Law are penal in nature, see, e.g., G. L. c. 90, § 24V (creating new penalties for driving while intoxicated with a child in the car), we think that the preamble's reference to increased penalties was not particularly tailored to the IID provision, and that the IID provision is part of a large statutory scheme aimed at reducing the number of accidents caused by drunk driving. See *United States* v. *Stoller,* 78 F.3d 710, 722 (1st Cir. 1996) (concluding statutory provision was remedial notwithstanding fact that sentence in legislative history contained "penal" element and other provisions within statute increased punishments).

Additionally, the Supreme Judicial Court, on numerous occa-

---

[5]An emergency preamble is a procedural mechanism used by the Legislature to make a law go into effect immediately, rather than ninety days after it has been signed by the Governor. See art. 48, The Referendum, I, of the Amendments to the Massachusetts Constitution; *Vittands* v. *Sudduth,* 41 Mass. App. Ct. 515, 518 (1996).

sions, has ruled that statutes imposing conditions on eligibility for continued licensure are remedial and nonpunitive in nature. See, e.g., *Rushworth* v. *Registrar of Motor Vehicles*, 413 Mass. 265, 270-271 (1992); *Luk, supra*; *Leduc, supra* at 435-436; *Dupont* v. *Chief of Police of Pepperell*, 57 Mass. App. Ct. 690, 694-695 (2003). For instance, in *Luk, supra* at 430, the court upheld a provision of G. L. c. 90, § 24, which mandates suspension of the driver's license of any individual who refuses to submit to a breathalyzer test in the event of an arrest based on OUI. The court emphasized that a driver's license is "a privilege voluntarily granted" and that "[r]evocation of this privilege has long reflected public safety concerns." *Id.* at 423.

In sum, the legislative scheme and case law considering that scheme support the conclusion that the IID restriction, with its goal of public safety, is not punitive.[6] While the IID requirement may be burdensome on Gordon,[7] that circumstance alone does not transform the statutory sanction into criminal punishment. See *Fleming* v. *Nestor*, 363 U.S. 603, 614 (1960) (even though restriction may bear harshly on individual, it is not punishment). Compare *Hawker* v. *New York*, 170 U.S. 189, 196 (1898) (even laws preventing individual from practicing profession as a result of criminal conduct are not punitive if underlying purpose

---

[6]We note that Pennsylvania courts, examining the IID requirement, have held that the imposition "is designed to keep the streets safe from the danger posed by intoxicated drivers, not to serve as an additional punishment to the offender." *Frederick* v. *Commonwealth Dept. of Transp., Bureau of Driver Lic.*, 802 A.2d 701, 704 (Pa. Commonw. 2002). See *Commonwealth* v. *Etheredge*, 794 A.2d 391, 397 (Pa. Super. 2002). Additionally, the Supreme Court of Pennsylvania has held that an OUI offender's loss of driving privileges is not a criminal penalty. See *Commonwealth* v. *Duffey*, 536 Pa. 436, 440, cert. denied, 513 U.S. 884 (1994). Other courts also have determined that limiting an offender's ability to drive is not penal in nature. See *Herbert* v. *Billy*, 160 F.3d 1131, 1137-1138 (6th Cir. 1998) (holding that license suspension of OUI offender did not constitute punishment); *Campbell* v. *Department of Motor Vehicles*, 155 Cal. App. 3d 716, 717-718 (1984) (holding that mandatory license suspension for OUI offenders did not violate ex post facto prohibition); *Clark* v. *New Jersey Div. of Motor Vehicles*, 211 N.J. Super. 708, 711 (App. Div. 1986) (holding that assessment of surcharges based on offenses committed prior to statute's enactment did not violate ex post facto prohibition).

[7]An individual subject to the IID requirement is responsible for the cost of installing, monitoring, and maintaining an IID on all vehicles that the individual owns, leases, or operates. See G. L. c. 90, § 24½; 540 Code Mass. Regs. § 25.07(1). The individual also is required to visit an authorized service provider approximately every thirty days. See 540 Code Mass. Regs. § 25.07(2).

is remedial). As Gordon failed to meet the burden of demonstrating that the statutory scheme at issue here is punitive, we determine that the IID requirement does not violate Gordon's constitutional protection against ex post facto laws.[8]

3. *The double jeopardy claim.* The double jeopardy clause of the Fifth Amendment to the United States Constitution protects against three distinct abuses: (1) "a second prosecution for the same offense after acquittal"; (2) "a second prosecution for the same offense after conviction"; and (3) "multiple punishments for the same offense." *North Carolina* v. *Pearce*, 395 U.S. 711, 717 (1969). In addition to its application as a State constitutional or common-law doctrine, the double jeopardy clause applies to State prosecutions by operation of the due process clause of the Fourteenth Amendment to the United States Constitution. See *Benton* v. *Maryland*, 395 U.S. 784, 787, 794 (1969). See also *Powers* v. *Commonwealth*, 426 Mass. 534, 537 n.5, 540 n.13 (1998) (Massachusetts has common-law and statutory protections equivalent to those provided for in the double jeopardy clause). Gordon asserts that G. L. c. 90, § 24½, violates the third protection provided by the double jeopardy clause, claiming that it punishes him a second time for the offense he committed in 2003.[9] As with the ex post facto clause, the double jeopardy clause applies only if Gordon demonstrates that the IID requirement is punitive. See *Luk*, 421 Mass. at 419.

---

[8]Gordon's reliance on *Bruno* is misplaced; in fact, the case favors the RMV and not Gordon. In *Bruno*, 432 Mass. at 499, the defendants argued that the sexual predator statute at issue was an ex post facto law, claiming that it was punitive in both intent and effect. The court rejected the argument, holding that the statute was civil and remedial as evidenced by its over-all statutory purpose. *Id.* at 500.

[9]Gordon maintains that as to the punishment of his 2003 offense, he paid his fines, had his license revoked, and participated successfully in his probation. He further argues that the fee that the RMV charges for the installation and use of the IID is comparable to the probation process itself. For instance, when an individual is on probation, that individual pays a monthly probation fee, checks in with a probation officer on regular basis, and where drugs and alcohol have been involved, can be required to provide a urine or hair sample for testing. According to Gordon, the IID requirement is equivalent to a regular probation scheme in that there is a monthly fee of $85, a monthly requirement to go to an IID installation location, and the requirement to utilize the IID in order to start and operate a vehicle. Gordon therefore concludes that "[i]f probation is considered punishment, surely the IID requirement is punishment as well."

Gordon contends that based on *United States* v. *Hudson*, 14 F.3d 536, 540 (10th Cir. 1994), "if a sanction is not exclusively remedial, but rather can only be explained as also affecting deterrence or retribution, it is punishment for double jeopardy analysis." In fact, however, *Hudson* eventually reached the United States Supreme Court, which ruled that the statute at issue was remedial, despite having a punitive element. Specifically, the Court stated: "[W]e recognize that the imposition of both money penalties and debarment sanctions will deter others from emulating petitioners' conduct, a traditional goal of criminal punishment. But the mere presence of this purpose is insufficient to render a sanction criminal, as deterrence 'may serve civil as well as criminal goals.' " *Hudson* v. *United States*, 522 U.S. 93, 105 (1997) (*Hudson II*), quoting from *United States* v. *Ursery*, 518 U.S. 267, 292 (1996). The Court further emphasized that the sanction at issue, "while intended to deter future wrongdoing, also serve[s] to promote the stability of the banking industry. To hold that the mere presence of a deterrent purpose renders such sanction[] 'criminal' for double jeopardy purposes would severely undermine the Government's ability to engage in effective regulation of institutions such as banks." *Hudson II, supra.* See *Stoller*, 78 F.3d at 724 ("Where . . . double jeopardy analysis proceeds under an appraisal of the totality of the circumstances, a civil sanction need not be solely remedial to pass constitutional muster. In other words, the fact that something akin to punishment occurs along with, and incidental to, a sanction's overriding remedial purpose will not transform a permissible civil penalty into a prohibited multiple punishment").

To be sure, the double jeopardy prohibition cannot be avoided by merely calling a statute civil when, in effect, it is criminal. However, here, as we determined above, the main purpose and effect of the IID requirement are clearly remedial and civil.[10] See *Hudson II, supra* at 104, quoting from *Flemming* 363 U.S. at 617 ("While petitioners have been prohibited from further participating in the banking industry, this is 'certainly nothing

---

[10]As we have noted above, although the preamble refers to "penalties," that term does not render the statute penal. See *One Assortment of 89 Firearms*, 465 U.S. at 364 n. 6.

approaching the "infamous punishment" of imprisonment' "). As such, Gordon's double jeopardy claim fails.

4. *Due process claim.* Finally, Gordon appears to contend that the IID requirement violates his substantive due process rights, and that its application as to him constitutes impermissble retroactive enforcement. We disagree.

a. *Substantive due process.* Substantive due process prohibits the government from engaging in conduct that "shocks the conscience," *Rochin* v. *California,* 342 U.S. 165, 172 (1952), or interferes with rights "implicit in the concept of ordered liberty." *Palko* v. *Connecticut,* 302 U.S. 319, 324-326 (1937). "In substantive due process analysis, the nature of the individual interest at stake determines the standard of review that courts apply when deciding whether a challenged statute meets the requirements of the due process clause." *Aime* v. *Commonwealth,* 414 Mass. 667, 673 (1993).

It is well established that the due process clause applies to the deprivation of a driver's license by the State. *Dixon* v. *Love,* 431 U.S. 105, 112 (1977). The interest at stake, however, is not a fundamental right; therefore, the due process inquiry is focused on whether the statute is reasonably related to a permissible legislative objective. *Rushworth,* 413 Mass. at 269 n.5, 270. The statute in the instant case is entitled to a presumption of validity, see *Marshal House, Inc.* v. *Rent Control Bd. of Brookline,* 358 Mass. 686, 694 (1971), and Gordon has the burden of establishing that the statute lacks a rational basis. See *Commonwealth* v. *Franklin Fruit Co.,* 388 Mass. 228, 235 (1983).

We concur with the Superior Court judge that enforcing G. L. c. 90, § 24½, in the instant case, rationally serves the legislative purpose of protecting the public from the danger of drunk driving. In effectuating its interest, the Legislature has determined that all repeat OUI offenders pose a danger to the public safety and are, therefore, subject to the IID requirement. The authority to select the most effective procedures for dealing with a serious problem such as drunk driving belongs to the Legislature. See *Luk,* 421 Mass. at 429. Further, the Legislature is not confined to individualized determinations in order to implement public safety. See *Spence* v. *Gormley,* 387 Mass. 258, 270 (1982). While Gordon contends that the IID requirement will unduly

impose burdens on drivers who are subject to G. L. c. 90, § 24½, we note that the Legislature "is not bound to choose the best or gentlest of methods" to achieve the objective of public safety, *id.* at 271, and "[s]ome degree of overinclusiveness or underinclusiveness is constitutionally permissible" in applying the rational basis test. See *Massachusetts Fedn. of Teachers, AFT, AFL-CIO* v. *Board of Educ.*, 436 Mass. 763, 778 (2002). In view of the carnage caused by individuals driving while intoxicated, the IID requirement can hardly be characterized as excessive. In sum, we hold that G. L. c. 90, § 24½, as applied to Gordon, does not impermissibly infringe on his substantive due process rights.[11]

b. *Retroactivity.* Gordon contends that the IID requirement of § 24½ was applied retroactively to him in violation of his due process rights, as it imposed sanctions against him for conduct committed before its enactment. However, the application of the IID requirement to Gordon was not retroactive as the event triggering the requirement was Gordon's decision to seek the reinstatement of his license, which occurred after the statute went into effect, and not his prior OUI conviction. See *Bruno*, 432 Mass. at 497-498 ("When the conduct triggering the statute's application occurs on or after its effective date, the statute's application is deemed prospective, and therefore permissible").

Even if the IID requirement was deemed to be retroactive, it is still constitutional. *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.*, 450 Mass. 780, 788 (2008) (*Doe No. 8725*). "Retroactive laws must meet the test of 'reasonableness' to comport with . . . constitutional due process requirements." *Ibid*, quoting from *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 189-190 (1978). A retroactive statute will satisfy the due process requirement of reasonableness if it (1) serves an important public interest, such as health, safety, or welfare; (2) restricts or burdens a right or interest that is not fundamental or substantial; and (3) if it diminishes that right or interest to a rationally measured degree. See *American Mfrs. Mut. Ins. Co., supra* at 189-196; *Doe No. 8725, supra* at 788-793.

---

[11]We also note that the minimal risk of erroneous deprivation of an individual's driver's license presented by § 24½ and its postdeprivation procedural safeguards promote due process interests. See *Mackey* v. *Montrym*, 443 U.S. 1, 13 (1979).

Here, the IID requirement serves a very important purpose of safety on the roads. While it restricts an individual's freedom, as has been noted, "there is no fundamental right to operate a motor vehicle." *Rushworth*, 413 Mass. at 269 n.5. In any event, the restriction — triggered by two OUI convictions, and not a single aberrant mistake — applies only for two years, and at an intermediate expense. Quite clearly, the IID requirement passes the reasonableness test of the due process clause.

*Conclusion.* For the foregoing reasons, we affirm the judgment of the Superior Court, allowing the RMV's motion for summary judgment and denying Gordon's motion for summary judgment.

*So ordered.*