ERNST J. MEYER vs. TOWN OF NANTUCKET[1] & another.[2]

No. 09-P-1613.

Suffolk. February 10, 2010. - December 6, 2010.

Present: KAFKER, VUONO, & SIKORA, JJ.

*Board of State Examiners of Plumbers and Gas Fitters. Municipal Corporations,* Regulations, Building inspector. *License. Statute,* Validity. *Regulation.*

In a civil action arising out of a dispute between the parties over plumbing that the plaintiff homeowner installed himself in his home, the judge properly concluded that the Board of State Examiners of Plumbers and Gas Fitters (board) had acted properly in upholding the defendant town's building inspector's order requiring the plaintiff to cease all plumbing work, where the board's regulations prohibiting unlicensed persons from performing plumbing work regardless of circumstance were not arbitrary, capricious, or manifestly contrary to the statutory purpose of protecting the health and safety of the public through safe plumbing, and where the plaintiff's claim of a violation of his constitutional right to due process lacked merit [388-393]; however, the judge erred in concluding that the board had properly upheld the building inspector's order requiring the plaintiff to remove the uninspected plumbing, where an inspection and appropriate findings were conditions precedent to the issuance of a removal order, and the plaintiff's lack of a plumbing license did not obviate the need for specific evidence of unskilled or inferior workmanship [393-395].

CIVIL ACTION commenced in the Superior Court Department on December 24, 2008.

The case was heard by *D. Lloyd Macdonald,* J., on motions for judgment on the pleadings.

*Ernst J. Meyer,* pro se.

*Kimberly M. Saillant* for town of Nantucket.

VUONO, J. This case arises out of a dispute between the plaintiff, Ernst J. Meyer, and the town of Nantucket over plumbing Meyer installed himself in his Nantucket home. The town plumbing inspector ordered Meyer to remove the plumbing on the

---

[1]Acting by and through the plumbing inspector of Nantucket.

[2]Board of State Examiners of Plumbers and Gas Fitters.

grounds that Meyer failed to obtain a permit prior to installation and that Meyer is not a licensed plumber. The issue is whether G. L. c. 142, which regulates the practice of plumbing in the Commonwealth, exempts homeowners who perform plumbing work in their own homes from its licensing requirements. A related question is whether the plumbing inspector exceeded his authority by issuing the removal order without first inspecting the plumbing for compliance with the State plumbing code.

The pertinent facts are not in dispute. In 1968, Meyer purchased an undeveloped parcel of land located on Red Barn Road in the town of Nantucket (town) with the intention of building a family home. He eventually began construction, performing most of the work himself. On or about March 19, 2007, Meyer submitted an application to the Nantucket building commissioner for a permit to personally install the plumbing for four bathrooms, a kitchen, and a laundry facility.[3] Meyer, a retired opthamologist, is not a plumber by trade and holds no plumbing license.[4] By letter dated April 5, 2007, the building commissioner rejected Meyer's permit application, stating, "The only person that is allowed to do plumbing work in [Massachusetts] is a [Massachusetts] Licensed Plumber with the proper permit." The letter specifically referenced a State regulation governing the conduct of plumbing in the Commonwealth, which provides in relevant part, "Permits [to perform plumbing work] shall be issued to licensed plumbers only." 248 Code Mass. Regs. § 3.05(1)(b)(7)(a) (2005). A copy of the regulation was appended to the letter.

Meyer did not appeal the denial of his request for a permit. Rather, taking the position that neither the statute nor the regulations prohibited unlicensed homeowners from installing plumbing in their own homes, Meyer proceeded to install the plumbing without a permit. By September of 2008, Meyer had substantially completed the rough plumbing in his house and had installed one

---

[3]The letter also addressed Meyer's request for an electrical permit, but that application is not before us.

[4]In his initial correspondence with the Nantucket building commissioner, which sought information as to whether a homeowner may perform electrical and plumbing work, Meyer stated, "I have extensive experience both in wiring and in plumbing, both of which I consider my hobbies; but I have neither an electrician's nor a plumber's license."

toilet, one shower, and a hot water heater for his personal use during continued construction.

On November 25, 2008, the Nantucket plumbing inspector (inspector) issued an "Order to Cease and Desist and Abate," instructing Meyer to immediately stop the installation, cease using the plumbing he had installed, and to have the plumbing removed by a licensed plumber. Meyer appealed the order to the Board of State Examiners of Plumbers and Gas Fitters (board), claiming that homeowners like himself were not within the scope of G. L. c. 142, § 3, which, Meyer contended, only requires the licensing of master plumbers, journeyman plumbers, and apprentice plumbers. Meyer also challenged the inspector's authority to order the removal of the plumbing without first inspecting it for compliance with code requirements, and requested to have the plumbing inspected. During the pendency of his appeal before the board, Meyer stopped using the plumbing, but did not remove it. The inspector has never inspected the installed plumbing.

After a hearing, the board issued a final decision and order upholding the order requiring Meyer to cease performing plumbing work and to remove the plumbing.[5] The board concluded that by doing "work in plumbing" under G. L. c. 142, § 1, as amended by St. 1977, c. 843, § 3, Meyer was operating as a journeyman plumber within the meaning of the statute and was, therefore, subject to its licensing requirements. The board further found that the statute contains no homeowner's exemption. Finally, the board found that, although the removal of the plumbing may be burdensome on Meyer, the removal order was within the scope of the inspector's authority under section 10.04 of the State plumbing code, 248 Code Mass. Regs. § 10.04 (2005), and reasonable "in light of the fair warning [given] to . . . Meyer."[6]

On Meyer's complaint for judicial review before the Superior

---

[5]The board also voted unanimously "to open a complaint to determine if . . . Meyer should face a civil administrative penalty or other such discipline for practicing plumbing without a license." The record does not show whether a complaint issued.

[6]The board's alternative ground for affirming the order of the plumbing inspector was that Meyer is not the actual homeowner, and, therefore, even if there were a homeowner's exception, it would not apply here. Although our review of the record discloses no serious dispute as to Meyer's ownership of

Court, acting on cross motions for judgment on the pleadings, a judge affirmed the board's decision. See G. L. c. 30A, § 14. The judge rejected Meyer's claims that the licensing requirements contained in G. L. c. 142 only apply to individuals in the business of plumbing and that it would be unreasonable to read the statute as prohibiting unlicensed persons from engaging in "do-it-yourself" plumbing in their own homes. The judge also rejected Meyer's constitutional and procedural arguments. The judge entered a judgment dismissing Meyer's complaint.

*Discussion.* On appeal, Meyer continues to press his argument that the licensing requirements contained in G. L. c. 142, § 3, do not apply to homeowners like himself and, consequently, that the board's decision upholding the inspector's order was based on a error of law. The crux of Meyer's argument is that by promulgating and enforcing regulations which effectively prohibit any unlicensed person from performing plumbing work regardless of circumstance,[7] the board exceeded its authority under G. L. c. 142, which, according to Meyer, evinces no intent on the part of the Legislature to prohibit unlicensed individuals from installing plumbing in their own homes. In the alternative, Meyer argues that such a prohibition violates due process. We consider these arguments in turn.

1. *Validity of the board's regulations.* To determine the validity of a duly promulgated administrative agency regulation, we follow the familiar two-step framework established by the United States Supreme Court in *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-844 (1984). See *Goldberg* v. *Board of Health of Granby*, 444 Mass. 627, 632-633 (2005). First, using conventional tools of statutory interpretation, we determine "whether the Legislature has spoken with certainty on the topic in question, and if we con-

---

the premises or his intent to live in the house, given our conclusion below that no homeowner's exception exists, we have no reason to address the ownership issue.

[7]Title 248 Code Mass. Regs. § 3.05(1)(b)(1) (2005) provides that "[u]ntil a Permit has been issued by the Inspector, plumbing or gas fitting work shall not be: . . . installed; . . . altered; . . . removed; . . . replaced; or . . . repaired." As noted above, 248 Code Mass. Regs. § 3.05(1)(b)(7)(a) provides in turn that "[p]ermits [to perform plumbing work] shall be issued to licensed plumbers only."

clude that the statute is unambiguous, we give effect to the Legislature's intent." *Ibid.* If, however, there is ambiguity in the statute or the Legislature has not directly addressed the issue, we must proceed to step two and "determine whether the agency's resolution of that issue may 'be reconciled with the governing legislation.' " *Id.* at 633, quoting from *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgmt. Bd.*, 421 Mass. 196, 211 (1995).

Under step two, we are required to give substantial deference to an agency's interpretation of a statute within its charge, and regulations "are not to be declared void unless their provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate." *Goldberg, supra* at 633, quoting from *Berrios* v. *Department of Pub. Welfare*, 411 Mass. 587, 595-596 (1992). In conducting our analysis, "it is unimportant whether we would have come to the same interpretation of the statute as the agency." *Goldberg, supra.* See *Biogen IDEC MA, Inc.* v. *Treasurer & Receiver Gen.*, 454 Mass. 174, 187 (2009). "A party challenging a regulation bears the burden of proving that the regulation is 'illegal, arbitrary, or capricious.' " *Ciampi* v. *Commissioner of Correction*, 452 Mass. 162, 166 (2008), quoting from *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707, 722, cert. denied sub nom. *Formaldehyde Inst., Inc.* v. *Frechette*, 464 U.S. 936 (1983).

Informed by these principles, we begin with the statutory text itself. General Laws c. 142 does not specifically address the issue of homeowner installation of plumbing. Section 3 provides that "[n]o person shall engage in the business as a master plumber . . . or work as a journeyman plumber . . . or as an apprentice plumber . . . unless he is lawfully registered, or has been licensed by the [board] as provided in this chapter." G. L. c. 142, § 3, as appearing in St. 1977, c. 843, § 4. In turn, § 1 defines "[j]ourneyman plumber" broadly as "a person who himself does any work in plumbing and gas fitting, subject to inspection under any law, rule or regulation."

Meyer urges us to construe these provisions as unambiguously exclusive of homeowners like himself. He argues that because the Legislature specifically defined "[j]ourneyman plumber" as a person who does work in plumbing *and* gas fitting, doing "work in plumbing" alone does not meet the statu-

tory definition. More broadly, he argues that the Legislature's use of the terms "work" and "journeyman" implies that it intended to require licensure only for paid work performed by professionals, not by a lay or unlicensed do-it-yourself plumber.

The town advances the opposite contention, that the plain language of the statute is unambiguously inclusive of homeowners. It argues that the broad definition of "[j]ourneyman plumber" contained in § 1 demonstrates that all persons who themselves do "any work in plumbing" are subject to the licensing requirements set forth in § 3. It further contends that the Legislature's failure to include an express exemption for homeowners or for persons not engaged in the business of plumbing demonstrates that no exception for do-it-yourself plumbing was intended.

"When a statute is 'capable of being understood by reasonably well-informed persons in two or more different senses,' it is ambiguous." *Falmouth* v. *Civil Serv. Commn.*, 447 Mass. 814, 818 (2006), quoting from *AT&T* v. *Automatic Sprinkler Appeals Bd.*, 52 Mass. App. Ct. 11, 14 (2001). Having considered the parties' positions, neither of which we find to be patently implausible, we conclude that G. L. c. 142 does not evince the unambiguous meaning that either of the parties would assign to it. Because the Legislature has not "spoken with certainty" to the precise question at issue, we consider whether the board's resolution of the issue may reasonably be harmonized with the legislative mandate. *Goldberg,* 444 Mass. at 633. We conclude that it can.

Meyer essentially claims that the primary purpose of the statute is to protect the public, as consumers of services, from unqualified plumbers, a goal to which the prohibition of do-it-yourself plumbing bears no reasonable relationship. We disagree. It is well established that the principal aim of the Legislature in enacting G. L. c. 142 was to protect the health and safety of the public by providing for safe plumbing. See *Commonwealth* v. *Beaulieu,* 213 Mass. 138, 141-142 (1912); *Barriere* v. *Depatie,* 219 Mass. 33, 36 (1914) (the "primary object [of G. L. c. 142] is the conservation of the public health from the deleterious effects which experience has shown arise from unsanitary and insufficient plumbing work due to the lack of technical knowledge and skill of those who perform it"); *Attorney Gen.* v. *Union*

*Plumbing Co.*, 301 Mass. 86, 89 (1938) (purpose of the statute "is to secure sanitary plumbing for the protection of the public health"); *Springfield Gas Light Co.* v. *Board of State Examiners of Plumbers*, 329 Mass. 664, 665 (1953); *Mercado* v. *Manny's T.V. & Appliance, Inc.*, 77 Mass. App. Ct. 135, 139 (2010) ("There can be no question that the intent of the electrical and plumbing code is to protect public health, safety, and welfare"). Regulations prohibiting unlicensed individuals — even non-professionals working in their own homes — from performing plumbing work are clearly consonant with this prophylactic purpose. Accordingly, Meyer has failed to meet his burden of demonstrating that the contested regulations are arbitrary, capricious, or manifestly contrary to the statutory purpose.

In reaching our decision, we are not unsympathetic to Meyer's practical arguments regarding the rise of the do-it-yourself industry in recent years and the proliferation of home improvement stores within the Commonwealth which, by their advertisements, would appear to encourage homeowners to engage in unlicensed plumbing work. Nor are we unmindful of the fact that the regulations, as promulgated, make it more difficult for a resourceful homeowner to minimize the financial burden of installing plumbing. We are also cognizant of the fact that the Legislatures of many States have seen fit to expressly include in their plumbing laws the type of homeowner's exception which Meyer is advancing.[8] However, the relevant question is not whether we would have

---

[8]See Ark. Code Ann. § 17-38-302(1) (2010) (exempting homeowners from license requirement for plumbing work on own residences except where license required by local ordinance); Colo. Rev. Stat. § 12-58-113(2) (2010) (exempting "individual[s] . . . perform[ing] plumbing work on . . . own property or residence"); Conn. Gen. Stat. § 20-340(11) (2009) (exempting single-family homeowners); Del. Code Ann. tit. 24, § 1807(c)(2) (Supp. 2008) (exempting homeowners in part); Ga. Code Ann. § 43-14-13(d) (Supp. 2010) (exempting owners and occupiers of residential dwellings); Iowa Code Ann. § 105.11(3) (West 2010) (exempting owners performing plumbing work on existing single-family principal residence, or farm property); Ky. Rev. Stat. Ann. § 318.015(3) (West Supp. 2010) (exempting "farmsteads"); La. Rev. Stat. Ann. § 37:1377(D)(8) (Supp. 2010) (excluding plumbing "done by an individual on his own personal residence"); Me. Rev. Stat. Ann. tit. 32, § 3302(1)(C) (Supp. 2010) (exempting owners and occupiers of single-family residences); Md. Code Ann., Bus. Occ. & Prof. § 12-301(b) (LexisNexis 2010) (exempting homeowners and occupants of residences); Mich. Comp. Laws Ann. § 338.3525(3) (West 2004) (exempting single-family homeowners); Mont. Code Ann. § 37-69-102(1)(a) (2009) (exempting "owner of a single-family

come to the same interpretation of the statute as the agency (a matter on which we express no view), or even whether a viable alternative exists. "The ultimate question is whether the policy embodied by the agency's interpretation is reasonable." *Biogen IDEC MA, Inc.*, 454 Mass. at 187. Here, it is.

For similar reasons we also reject Meyer's contention that the board's prohibition of unlicensed do-it-yourself plumbing violates his right to due process under the Fourteenth Amendment to the United States Constitution and the cognate provisions of the Massachusetts Declaration of Rights. "Substantive due process prohibits the government from engaging in conduct that 'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty.' " *Gordon* v. *Registry of Motor Vehicles*, 75 Mass. App. Ct. 47, 55 (2009), quoting from *Rochin* v. *California*, 342 U.S. 165, 172 (1952), and *Palko* v. *Connecticut*, 302 U.S. 319, 324-326 (1937). Where, as here, the interest at stake is not a fundamental right, a challenger has the burden of establishing that the statute lacks a rational basis, that it is not reasonably related to a permissible legislative objective. See *Commonwealth* v. *Franklin Fruit Co.*, 388 Mass. 228, 235 (1983) (noting that the standard of review is the same under the Massachusetts and United States Constitutions); *Gordon, supra.*

---

residence used exclusively for the owner's personal use"); N.H. Rev. Stat. Ann. § 329-A:13(III) (Supp. 2009) (exempting single-family homeowners or agents thereof); N.J. Stat. Ann. § 45:14C-12.4 (West 2009) (exempting single-family homeowners); N.D. Cent. Code § 43-18-11 (2007) (exempting homeowners); Okla. Stat. Ann. tit. 59, § 1017(6) (West 2010) (exempting individual's plumbing work on property of residence); Or. Rev. Stat. § 447.060(1)(a) (2009) (exempting persons engaging in plumbing work when not so engaged for hire); Tenn. Code Ann. § 62-6-404(b)(2) (2009) (exempting single-residence homeowners); Tex. Occ. Code Ann. § 1301.051 (West 2004) (exempting property owners performing plumbing in own homestead); Utah Code Ann. § 58-55-305(1)(d) (LexisNexis Supp. 2010) (exempting sole owners of property engaged in certain building); Vt. Stat. Ann. tit. 26, § 2198(a)(1) (2006) (exempting plumbing work by owner in owner-occupied freestanding single-family dwelling or accessory outbuilding); Va. Code Ann. § 54.1-1101.A.7 (2009) (exempting homeowners); Wash. Rev. Code § 18.27.090(12) (2010) (exempting property owners and property residents); W. Va. Code Ann. § 21-14-3(c)(1) (LexisNexis 2008) (exempting single-family homeowners and lessees, and immediate family members); Wis. Stat. Ann. § 145.06(4)(a) (West 2006) (excluding homeowner occupying one-family building as home or farm building, except where license required by local ordinance).

There can be no question that the Commonwealth has a valid legislative interest in protecting the health and safety of the public by providing for safe plumbing. It is equally beyond question that regulating the installation of plumbing is rationally related to this interest. Accordingly, Meyer's constitutional claim lacks merit.[9]

2. *Validity of the removal order.* Meyer's second argument before the board was that the inspector exceeded his statutory and regulatory authority by issuing a removal order without first conducting an inspection of the installed plumbing. The board rejected this argument, reasoning (1) that the issuance of removal orders is generally within the scope of an inspector's duties under G. L. c. 142, § 11; (2) that 248 Code Mass. Regs. § 10.04(5) (2005) expressly requires inspectors to issue removal and correction orders "[i]f at the time of testing and Inspection . . . evidence of unskilled or inferior workmanship is found"; and (3) that because Meyer did not hold a plumbing license, unskilled or inferior workmanship could be presumed.

Although we give considerable weight to an agency's experience and authority, "we must overturn agency decisions that are not consistent with governing law." *Bulger* v. *Contributory Retirement Appeal Bd.,* 447 Mass. 651, 657 (2006). The term "governing law" in this context implies not only statutes but also an agency's own properly promulgated regulations. See *Benevolent & Protective Order of Elks, Lodge No. 65* v. *Planning Bd. of Lawrence,* 403 Mass. 531, 550 (1988) ("Promulgated regulations have the force of law, and bind the agency").

Here, the regulations at issue, 248 Code Mass. Regs. §§ 3.05(3)(g) and 10.04(5), plainly envision that an order of

[9]Meyer's position is not strengthened by his claim that the plumbing system he installed poses no risk to the safety of the town's water because his house is not connected to the public water supply. In determining whether a statute has a rational basis we do not consider the individual claims; rather, we evaluate the State's reasons for enacting the law. See *Cook* v. *Gates,* 528 F.3d 42, 55 (1st Cir. 2008), cert. denied sub nom. *Pietrangelo* v. *Gates,* 129 S. Ct. 2763 (2009).

In the present circumstance, the Legislature and the State and local agencies could rationally conclude that the do-it-yourself homeowner could be installing plumbing not only for himself but also for all subsequent buyers, renters, or other occupants of the structure. In that long view, enforcement of the building code is a legitimate police power concern of public health, safety, and welfare.

removal will be predicated on a finding by the inspector that there is "evidence of unskilled or inferior workmanship" and that any such finding will be made "*at the time of Inspection*" (emphasis supplied).[10] Based on this plain language, we conclude that an inspection and appropriate findings are conditions precedent to the issuance of a removal order under the regulations.[11] Here, it is undisputed that the inspector has not conducted an inspection of the plumbing in Meyer's home. Indeed, the record is clear that he refuses to do so. Accordingly, the inspector's removal order is not in accordance with governing law.

Furthermore, we reject the board's conclusory determination

---

[10]Title 248 Code Mass. Regs. § 3.05(3)(g) (2005), which in its entirety provides:

> "*Defective Materials and Poor Workmanship*. If, at the time of Inspection, any leaks, defective or patched materials, or evidence of unskilled or inferior workmanship are found with a plumbing or gas installation, the following procedures shall be followed:

> "1. The Inspector shall condemn the same affected part(s) or entire system.

> "2. The Inspector shall order the Licensee to remove or correct the defective parts, or unskilled or inferior workmanship.

> "3. No further progress shall be allowed on the work until the defective parts or the unskilled or inferior workmanship is made to be compliant with [Title 248 Code Mass. Regs]."

Similar language appears in 248 Code Mass. Regs. § 10.04(5) (2005):

> "*Defective Materials and Poor Workmanship*. If at the time of testing and Inspection leaks, defective or patched materials, or evidence of unskilled or inferior workmanship is found with the plumbing installation, the following procedures shall be followed:

> "(a) The Inspector shall condemn the affected part(s) or entire system.

> "(b) The Inspector shall order that the defective parts, unskilled or inferior workmanship be removed and corrected.

> "(c) No further progress shall be allowed with the installation until the defective parts, unskilled or inferior workmanship is compliant with 248 [Code Mass. Regs. §§ ] 3.00 through 10.00."

[11]Contrary to Meyer's argument, G. L. c. 142, §§ 11, 13, provide authorization for the regulations as written. However, contrary to the board's apparent position, the language of G. L. c. 142, § 11, mandating that plumbing inspectors "perform such other appropriate duties as may be required," does not authorize a removal order in the absence of a specific implementing regulation.

that Meyer's lack of a plumbing license obviated the need for specific evidence of unskilled or inferior workmanship.[12] There is no question that by engaging in plumbing work with neither a permit nor a license Meyer violated the statute (as reasonably interpreted by the board) and the plumbing code. However, the removal remedy available to inspectors under 248 Code Mass. Regs. §§ 3.05(3)(g) and 10.04(5) is not directed at all defects or violations of law, but specifically at "Defective Materials and Poor Workmanship." Cf. G. L. c. 142, § 16 (imposing fine upon persons who engage in unlicensed plumbing work); 248 Code Mass. Regs. § 10.04(2)(b)(4)(a) (2005) (providing that where there are "any defects or violations of [Title 248 Code Mass. Regs.], the plumber shall be required to remedy the violations and defects, without delay, and notify the Inspector for a repeat Inspection of the installation"). Here, the board explicitly declined to make any findings "regarding the scope of . . . Meyer's work, nor whether that work was done per the plumbing code." Its determination to uphold the order of removal, therefore, was premature and unsupported by substantial evidence. See G. L. c. 30A, § 14(7)(e).[13]

*Conclusion.*[14] We affirm so much of the judgment entered in the Superior Court as affirms the board's decision to uphold the inspector's order requiring Meyer to cease all plumbing work. We reverse so much of the judgment as affirms the board's decision to uphold the order requiring Meyer to remove the

[12]The board expressed the view in its decision that because inspection may not uncover every defect, an order of removal merely for unlicensed installation is a reasonable prophylactic measure. We have no occasion here to decide whether the board may, consistent with G. L. c. 142, amend its regulations to empower plumbing inspectors to order the removal of plumbing solely on the basis of installation by the unlicensed. Our decision simply applies the current regulations as written.

[13]The inspection of Meyer's work must be one of integrity and fairness. A report of any deficiencies must have the substantiation of specific and detailed findings and reasoning. Any decision resting upon the inspection will remain subject to review by the Superior Court and appellate courts under the standards of the Administrative Procedure Act, G. L. c. 30A, § 14(7)(a)-(g).

[14]To the extent we have not discussed other arguments made by Meyer, they "have not been overlooked. We find nothing in them that requires discussion." *Tisbury Fuel Serv., Inc.* v. *Martha's Vineyard Commn.*, 68 Mass. App. Ct. 773, 781 (2007), quoting from *Commonwealth* v. *Domanski*, 332 Mass. 66, 78 (1954).

uninspected plumbing. The matter is remanded for further proceedings consistent with this opinion.

*So ordered.*