Brassard, J.
The plaintiff in this action seeks judicial review, pursuant to G.L.c. 30A, §14, of the Board of Motor Vehicle Liability Policies and Bonds’ decision affirming the Registry of Motor Vehicle’s ten-year revocation of her driver's license for vehicular homicide. The plaintiff argues that the Board's decision should be overturned because it was in violation of constitutional provisions, in excess of statutory authority, unsupported by substantial evidence, arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. In opposition, the Board moves for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c) and Superior Court Standing Order 1-96, contending that because administrative errors allowed the plaintiff to continue driving after her conviction, she cannot establish any prejudice to her substantial rights.
BACKGROUND
The facts are taken from the record, filed as the Board’s answer, as required by G.L.c. 30A, §14(4).
On December 4, 1988 the plaintiff, Michelle Flatley (“Flatley”), was operating her vehicle on a residential street in Lexington, Massachusetts. She was going approximately 50 miles per hour in a 35-mile zone when she lost control of her vehicle and crashed into a tree. Robert Careo (“Careo”), the passenger in the front seat of Flatley’s vehicle, died instantly.
On January 2, 1990, Flatley admitted to sufficient facts and a guilty finding was entered on charges of Motor Vehicle Homicide by Negligent Operation, see G.L.c, 94, §24G(b),[2] and Minor Transporting Alcohol. Flatley was sentenced to community service and received a one-year suspended sentence. Pursuant to G.L.c. 90, §24G(c), which provides that “the registrar shall revoke the license or right to operate of a person convicted of a violation of subsection (a) or (b) for a period of ten years after the date of conviction for a first offense,” Flatley’s license should have been revoked by the Registry of Motor Vehicles (“Registry”) immediately after it received notification of her conviction from the clerk-magistrate of the District Court.[3] However, because of an apparent oversight by the District Court, the Registry was not informed of Flatley’s conviction until 1997.[4] As a result, Flatley continued to have an active Massachusetts driver’s *433 license; she was even able to renew her license in 1994.
After receiving notice of Flatley’s conviction in 1997, the Registrar revoked Flatley’s license for a period of ten years, effective November 13, 1997. On December 18, 1997, Flatley appealed the suspension of her license to the Board of Motor Vehicles Liability Policies and Bonds (“Board”). A hearing was held on July 31, 1998 after which the Board affirmed the Registrar’s suspension of her license. The Board indicated in its finding and order that Flatley could file a new appeal to the Board in January 2000.
On December 1, 1998, Flatley received a notice from the Registry that inaccurately stated that her license to operate motor vehicles in Massachusetts had been reinstated, effective on that date.[5] Flatley resumed driving and used a Massachusetts Identification Card that stated “Not a License” on the front of the card. On August 19, 1999 Flatley was stopped for speeding and was cited for operating after suspension and speeding. Because the Commonwealth could not produce a copy of the notice of suspension, Flatley was found not guilty after a bench trial of operating after suspension.
Thereafter, Flatley filed a second appeal with the Board regarding her license suspension. A hearing was held on November 29, 2000, and the Board again affirmed the Registrar’s decision. In so doing, the Board acknowledged the apparent error by the District Court in its handling of Flatley’s license suspension resulting in the delay in the revocation of Flatley’s license. The Board also acknowledged testimony from Flatley regarding her hardship in not having a license, as well as testimony from Carco’s family regarding the impact of his death upon their lives.
In pertinent part, the Board concluded;
Two factors weighed heavily in the Board’s determination that the Registry’s revocation should be affirmed. The Appellant’s admission to the charge of Motor Vehicular Homicide carried a sanction and the victim’s family has a right to expect that the penalty would be enforced ... It was also significant that since the date of this tragic event, Ms. Flatley has been involved in another accident in 1992 (a rear ender) and had received two speeding tickets. A review of the testimony from this hearing and the prior hearing indicated that when she received the two speeding tickets, her children were in the vehicle with her. It appeared that the appellant continued to have a disregard for public safety and the safety of her children.
Flatley appealed the Board’s decision to the Superior Court on December 19, 2000.
DISCUSSION
Any party aggrieved by an administrative decision may appeal therefrom to the Superior Court pursuant to G.L.c. 30A, §14. The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. See Merisme v. Board of Appeals on Motor Vehicle Liability Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989); Faith Assembly of God v. State Bldg. Code Comm’n, 11 Mass.App.Ct. 333, 334 (1981). Under G.L.c. 30A, §14, this court may affirm, remand, set aside or modify an agency’s decision if it is determined that a party’s substantial rights were prejudiced because the decision was: (a) in violation of constitutional provisions, or (b) in excess of statutory authority or jurisdiction of the agency, or (c) based upon an error of law, or (d) made upon unlawful procedure, or (e) unsupported by substantial evidence, or (f) unwarranted by facts found by the court on the record as submitted, or (g) arbitrary or capricious, or an abuse of discretion or otherwise not in accordance with the law. See G.L.c. 30A, §14(7). A court’s review of an agency decision is confined to the administrative record. G.L.c. 30A, §14(5).
In the present case, Flatley was convicted of homicide by motor vehicle in 1990, but her ten-year license revocation did not commence until 1997. Thus, Flatley argues that the Board’s decision, which would prevent her from operating a motor vehicle in Massachusetts until 2007, seventeen years after her conviction, is in excess of the Board’s statutory authority and constitutes an error of law. In opposition, the Board argues that because Flatley remained free to operate motor vehicles from 1990-97, and did in fact do so, she incurred no prejudice as a result of the delay. Therefore, the Board urges that the Registrar’s decision to suspend her license for ten years effective November 13, 1997 must be allowed to ensure that Flatley serves the ten-year license suspension that is mandated by the statute.
In Brach v. Chief Justice of the District Court Department, 386 Mass. 528 (1982), the Supreme Judicial Court addressed the problem created by the delay between the date of conviction and the date a license suspension or revocation required under G.L.c. 90, §24( 1) becomes effective. The Court pointed out that under G.L.c. 90, §24( 1 )(b), the Registrar after receiving notice of the conviction from the clerk-magistrate, is required to revoke the license of a person convicted of violating certain motor vehicle offense specified in G.L.c. 90, §24(1 )(a).[6] However, because three or four months generally elapse between the date of conviction and the date a license suspension becomes effective, a joint task force of the District Court Department and the Registry promulgated Administrative Regulation No. 2-79 (AR 2-79). Id. at 530. AR 2-79 mandated that a defendant who is convicted of certain motor vehicle offenses listed in G.L.c. 90, §24(1)(a) and (2)(a), “surrender his Massachusetts operator’s license to the court immediately, for further transmittal to the Registry.” AR 2-79, §5(A). Id.
The Court struck down AR 2-79, holding that the Chief Justice of the District Court had neither explicit statutory authority nor inherent judicial power to *434 promulgate AR 2-79. Id. at 536. The Court also held that AR 2-79 violated Article 30 of the Declaration of the Massachusetts Constitution, which mandates that “the judicial department shall never exercise the legislative and judicial powers or either of them.” Specifically, the Court ruled that AR 2-79 violated Article 30 because it called for judges to perform license revocations, which is an area that has been assigned legislatively to the Registrar, an officer of the executive department. Id. at 538. The Court pointed out that any concern presented by its disapproval of AR 2-79 could readily be addressed if the Legislature were to enact legislation amending G.L.c. 90, §24. Id.[7]
Like Brach, this case involves the Board and Registry’s interpretation of a similar section of c. 90, specifically §24G(c), which governs vehicular homicide. In reviewing the interpretation of a statute or regulation by an administrative body, the court shall “give due weight to the experienced, technical competence and specialized knowledge of the agency.” See U.S. v. Jaycees, 391 Mass. 594, 600 (1984). No such deference is appropriate, however, when an agency commits an error of law. See Town of Wakefield v. Labor Relations Comm’n, 45 Mass.App.Ct. 630, 633 (1998). Further, "in the final analysis, the duty of statutory interpretation is for the courts.” See Town of Wakefield, 45 Mass.App.Ct. at 633; U.S. 391 Mass. at 600.
When asked to interpret a statute, the court first looks to the text of that statute. See Tupper v. U.S. 134 F.3d 444 (1998). Courts will not go beyond the text of the statute if the meaning is plain. See Greebel v. FTP Software, Inc., 194 F.3d 185 (1999). When the statute speaks with clarity to an issue, “judicial inquiry into the statute’s meaning in all but the most extraordinary circumstance is finished.” See Brady v. Credit Recovery Co., Inc., 160 F.3d 64 (1998). “Statutory language is the ultimate trump card, and the remarks of sponsors of legislation are authoritative only to the extent that they are compatible with the plain language.” See U.S. v. Czubinski, 106 F.3d 1069 (1997).
Applying these rules of statutory construction, the language of G.L.c. 90, §24G(c) expressly and clearly states that the license of a person convicted of a violation of G.L.c. 90, §24G subsection (a) or (b) [vehicular homicide] shall be revoked for a period of ten years after the date of conviction. Under the plain terms of the statute, Flatley’s license should have been revoked until 2000. The Board’s decision allowing Flatley’s license to be revoked until 2007, and thus essentially for a period of seventeen years after the date of her conviction, is contrary to the plain meaning of the statute and therefore in excess of its statutory authority. Although the court recognizes the seriousness of Flatley’s offense and agrees good policy reasons exist to suspend Flatley’s license until 2007, the statute, which this court is obliged to enforce, permits revocation only for a period of ten years from the date of conviction. See Commonwealth v. Leno L. Dodge 428 Mass. 860 (1999) (judge did not have the authority under G.L.c. 276, §58 to order a defendant convicted of operating a motor vehicle while intoxicated to undergo drug and alcohol screening).
Under the present legislation, delays between the date of conviction for vehicular homicide and the date a license suspension or revocation becomes effective are likely. First, “the clerk-magistrate of each court is required to keep a full record of every criminal case filed therein ... in which a person is charged with a violation of any statute relating to the operation or control of motor vehicles . . . and to send an abstract of such record to the registrar.” See G.L.c. 90, §27. Then, the Registrar is required to revoke the license or right to operate of a person convicted of vehicular homicide. See G.L.c. 90, §24G(c). Finally, the Registrar is to send written notice of the license suspension to the licensee. See G.L.c. 90, §22. As Brach teaches however, it is for the Legislature, not the judiciary, to provide a remedy.[8]
ORDER
For the foregoing reasons, the Board of Appeal of Motor Vehicle Liability Policies and Bond’s decision is REVERSED. Ms. Flatley’s license to operate her motor vehicle in Massachusetts is REINSTATED.

 General Laws c. 90, §24G, provides, in relevant part:
(b) Whoever operates a motor vehicle recklessly or negligently so that the lives or safety of the public might be endangered and by any such operation causes the death of another person, shall be guilty of homicide by a motor vehicle and shall be punished by inprisonment in a jail or house of correction ... or by a fine ... or both.

 Under G.L.c. 90, §27, “the clerk-magistrate of each court is required to keep a full record of every criminal case filed therein ... in which a person is charged with a violation of any statute relating to the operation or control of motor vehicles . . . and to send an abstract of such record to the registrar.”

 There is some dispute over how the Registry was informed of her conviction. Flatley alleges that the Registry learned of her conviction and imposed the ten-year sanction after receiving a phone call from her disgruntled husband, whom Flatley was in the process of divorcing. She claims that the Guardian Ad Litem instructed her to clear up the matter, and as a result she turned her license into the Boston Registry. She states that that she did not receive a notice as to why her license was suspended in November 1997. In contrast, the Board asserts that the Registry was informed by the District Court on October 22, 1997 when the District Court sent it the abstract of her conviction.

 The notice was issued based on the Registrar’s apparent misunderstanding that Flatley had been deemed an habitual violator in the state of Maine, resulting in the revocation of her driving privileges in that state and, by reciprocity, in Massachusetts as well. The Registrar issued the notice after learning that Flatley’s driving privileges were to be reinstated in Maine effective December 1, 1998, without stating that it applied only with respect to the suspension arising from her habitual offender status in Maine, and not the 10-year revocation resulting from the Massachusetts vehicular homicide.

 The offenses listed in G.L.c. 90, §24(1)(a) are: operating a motor vehicle while under the influence of intoxicating liquor; and operating a motor vehicle while under the influence of a narcotic or other drug or vapor.

 Shortly after the Brack case was decided in 1982, the Legislature amended G.L.c. 90, §24(l)(b), which governs license revocations pertaining to violations of G.L.c. 90, §24(1)(a), to read in part:
A conviction of a violation of subparagraph (1) of paragraph (a) shall revoke the license or right to operate of a person so convicted . . . Such revoked license shall immediately be surrendered to the prosecuting officer who shall forward the same to the registrar. The court shall report immediately any revocation, under this section, of a license or right to operate to the registrar and to the police department of the municipality in which the defendant is domiciled. •
However, similar changes have yet to be made regarding G.L.c. 90, §24G.

 Although the court in Michael R. Celatta, III v. Registry of Motor Vehicles, Mass. Super. LEXIS 824 (1995), reached a different conclusion when faced with a similar issue, this court is bound by the text of G.L.c. 90, §24G(c), which requires the Registrar to revoke the license of one convicted of vehicular homicide for a period of ten years after the date of conviction.