62 Mass. App. Ct. 159 (2004) 159

Stockman *v.* Board of Appeal on Motor Vehicle Liability Policies and Bonds.

## Ty Stockman *vs.* Board of Appeal on Motor Vehicle Liability Policies and Bonds & another.[1]

No. 01-P-1560.

Hampshire. September 15, 2003. - September 30, 2004.

Present: Armstrong, C.J., Kaplan, & Porada, JJ.

*Registrar of Motor Vehicles,* Revocation of license to operate. *Motor Vehicle,* Operating under the influence, Homicide. *Homicide.*

Where the plaintiff had been convicted in 1990 of operating a motor vehicle while intoxicated and where, in 1992, the plaintiff had been convicted of involuntary manslaughter and of motor vehicle homicide, and the criminal trial judge had dismissed the charge of motor vehicle homicide as duplicative for double jeopardy purposes, the registrar of motor vehicles (registrar) correctly revoked for life the plaintiff's license to operate a motor vehicle, because for a lifetime revocation, G. L. c. 90, § 24(1)(*c*)(4), requires two convictions of driving while intoxicated, coupled with a determination by the registrar that the second commission of that offense caused a fatal accident [160-161]; moreover, under the circumstances of this case, the registrar could properly treat the plaintiff's conviction in 1992 for manslaughter as a conviction of motor vehicle homicide, and thus of driving while intoxicated, for purposes of applying the lifetime revocation provisions of the statute [161-163].

Civil action commenced in the Superior Court Department on May 19, 2000.

The case was heard by *Bertha D. Josephson,* J., on a motion for judgment on the pleadings.

*William W. Adams* for the plaintiff.

*James S. Whitcomb,* Assistant Attorney General, for the defendants.

Armstrong, C.J. The plaintiff, Ty Stockman, was convicted in 1990 of operating a motor vehicle while intoxicated. See G. L. c. 90, § 24(1)(*a*)(1). Subsequently he was prosecuted for an

[1]Registrar of Motor Vehicles.

accident that occurred in February, 1992, wherein one Shannon Parker was killed. In that prosecution, the jury returned verdicts of guilty of involuntary manslaughter and of motor vehicle homicide, G. L. c. 90, § 24G(a), an offense that includes as an element a finding of driving while intoxicated. Following the procedure mandated by *Commonwealth* v. *Jones*, 382 Mass. 387, 392-395 (1981), the trial judge dismissed the charge of motor vehicle homicide as duplicative for double jeopardy purposes, and sentenced Stockman on the manslaughter conviction. Noting that a consequence of the *Jones* procedure was to leave standing only a conviction (i.e., manslaughter) that on its face did not suggest the death was caused by Stockman's drunk driving, the judge, cognizant that drunk driving convictions are the predicate for license revocations under G. L. c. 90, § 24(1)(c)(4), placed on the record the following notation:

> "In imposing sentence on only the involuntary manslaughter conviction, this court did not mean to preclude any appropriate license suspension sanctions for a motor vehicle fatality. This court therefore states that any licence suspension sanctions that would result from a conviction [under] chapter 90, section 24G, [the] motor vehicle homicide statute, should apply to this defendant, who in fact was convicted [under] both the . . . motor vehicle homicide statute and the involuntary manslaughter statute."

Upon receiving the court abstract, the registrar of motor vehicles suspended Stockman's license for ten years pursuant to § 24G(c). When the registrar later discovered Stockman's prior conviction of driving while intoxicated in 1990, the registrar, acting in accordance with his understanding of G. L. c. 90, § 24(1)(c)(4), revoked for life Stockman's license to operate. On appeal, the defendant board of appeal on motor vehicle liability policies and bonds (board) upheld the suspension, as did the judge who reviewed the board's decision under G. L. c. 30A, § 14. Both decisions are, in our view, correct.

Stockman's initial contention stems from the elusive wording of § 24(1)(c)(4), as amended through St. 1982, c. 373, § 4, which instructs the registrar as follows:

> "Notwithstanding the foregoing, no new license shall be

issued or right to operate be reinstated by the registrar to any person convicted of a violation of subparagraph (1) of paragraph (*a*) until ten years after the date of conviction in case the registrar determines upon investigation and after hearing that the action of the person so convicted in committing such offense caused an accident resulting in the death of another, *nor at any time after a subsequent conviction of such an offense,* whenever committed, in case the registrar determines in the manner aforesaid that the action of such person, in committing the offense of which he was so subsequently convicted, caused an accident resulting in the death of another" (emphasis added).

Stockman argues that the emphasized language requires, for a lifetime revocation, two separate accidents, each caused by the defendant's intoxicated driving, each resulting in a person's death. The correct reading, in our view, is that the words "subsequent conviction of such an offense" refer to a previous conviction of violating § 24(1)(*a*)(1), that is to say, of driving while intoxicated. For a ten-year revocation, § 24(1)(*c*)(4) only requires a conviction of driving while intoxicated, coupled with a determination by the registrar that the intoxicated driver caused a fatal accident. For a lifetime revocation, the language calls for two convictions of driving while intoxicated, coupled with a determination by the registrar that the second commission of that offense ("the action of such person, in committing the offense of which he was so subsequently convicted") caused a fatal accident. Here, Stockman, having been convicted in 1990 of driving while intoxicated, was subject to lifetime revocation if he was again convicted of driving while intoxicated, and the driving resulted, as it did here, in a fatality.

Stockman's second contention is that his conviction arising from the February, 1992, accident was not, as § 24(1)(*c*)(4) requires, a conviction of driving while intoxicated, despite the trial judge's notation suggesting the contrary. As a matter of law, he argues, the conviction of involuntary manslaughter does not imply drunk driving, or any other motor vehicle offense, because the elements of driving while intoxicated are not elements of involuntary manslaughter; and the drunk driving conviction implicit in the motor vehicle homicide conviction

was vitiated by the dismissal of the indictment. A consequence of the procedure required by *Jones*, Stockman argues, is that if the prosecutor elects to prosecute a motor vehicle homicide as a manslaughter case, he risks losing the opportunity to invoke the license revocation sanctions of § 24(1)(*c*)(4).

Plainly this is not what the Supreme Judicial Court intended by *Jones*, which sought only to preclude multiple criminal sentences where factually the conduct constituting the greater conviction (involuntary manslaughter) wholly included the conduct constituting the lesser conviction (motor vehicle homicide) with the added, aggravating element of reckless behavior necessary for manslaughter but not for motor vehicle homicide. In the words of the *Jones* opinion, 382 Mass. at 394:

> "Although we decline to hold that vehicular homicide is a lesser-included crime of manslaughter,[2] we nonetheless conclude that in the present situation, which in fact did involve operation of a motor vehicle on a public way, the two offenses are sufficiently closely related so as to preclude punishment on both. See *Commonwealth* v. *Cerveny*, 373 Mass. 345, 354-356 (1977). If involuntary manslaughter by reckless driving in public is proved, homicide by negligently operating to endanger is proved as well. The former is merely an aggravated form of the latter. Similarly, although the defendant has not argued the point, if involuntary manslaughter by reckless driving in public is proved, the nonhomicide offense of negligently operating to endanger is also proved."

Hence, in a *Jones* situation, that is to say, where a conviction of motor vehicle homicide is dismissed for the reason that the jury also convicted the defendant of manslaughter for the same conduct, the registrar properly treats the manslaughter conviction as a conviction of motor vehicle homicide (§ 24G[*a*]), and thus of driving while intoxicated (§ 24[1][*a*][1]), for purposes of applying the ten-year and lifetime revocation provisions of

---

[2]Each offense has an element or elements the other does not. Motor vehicle homicide requires the operation of a motor vehicle on a public way while intoxicated. Involuntary manslaughter requires wanton or reckless conduct. *Commonwealth* v. *Jones*, 382 Mass. at 393.

§ 24(1)(*c*)(4) and § 24G(*c*).[3] For another instance where revocation of a license is mandated upon a conviction under § 24, despite the fact that sentence was not imposed thereon, see *Commonwealth* v. *LeRoy*, 376 Mass. 243, 245 & n.1 (1978) (jury trial). See also *Commonwealth* v. *Gomes*, 419 Mass. 630, 633 (1995) (bench trial). It would make little sense, as the judge who reviewed the board's decision observed, for "an offender who is found guilty of negligent homicide under a theory of operating under the influence [to] benefit from the additional, albeit more serious . . . conviction of involuntary manslaughter."

Our decision on this point obviates the need to consider the defendant's argument that his revocation should be deemed to have commenced the day of his conviction for the February, 1992, accident.

*Judgment affirmed.*

---

[3]Section 24G(*c*) requires a lifetime revocation in the event of a second conviction of motor vehicle homicide. In contrast, under § 24(1)(*c*)(4), the only conviction required in order to trigger mandatory lifetime revocation is that of driving while intoxicated; the registrar need only "determine[] upon investigation and after hearing" that the offender's drunk driving resulted in the death of another.