Leibensperger, Edward P., J.
Plaintiff, Joseph Burke, seeks judicial review of a November 8, 2013 decision by the Board of Appeal on Motor Vehicle Liability Policies and Bonds (“the Board”), affirming a decision of the Registrar of Motor Vehicles (“the Registrar”) to permanently revoke Burke’s driver’s license. Burke moves for judgment on the pleadings pursuant to G.L.c. 30A, §14 and Mass.R.Civ.P. 12(c). After a review of the record and oral argument, Burke’s motion will be DENIED for the reasons set forth below.
BACKGROUND
The record before the Board contained the following facts. Bom in June 1979, Burke obtained a driver’s license in January 1996. Between 1996 and 2000, Burke was cited, and found responsible for, ñve separate speeding incidents. He also was found responsible for a surchargeable accident in November 1996. His driver’s license was suspended for 30 days in August 1996 as a result of the speeding violations. In 2000, Burke was the driver in two separate incidents of driving under the influence of liquor (“OUI”) as described below.
On February 27, 2000, Burke drove his motor vehicle off the road and into a cement wall. Upon police investigation, Burke was charged with OUI. On May 1, 2000, Burke admitted to sufficient facts for the charge of OUI. The court found sufficient facts but continued the matter without a finding (CWOF) until May 1, 2001. Burke was sentenced to probation for one year with terms that included a 180-day loss of license and an assignment to an alcohol education program. On January 11, 2001, Burke was found in violation of his probation as a result of the fatal motor vehicle accident described in the next paragraph. The CWOF was revoked and a sentence was entered. He was sentenced to serve 18 months in the House of Correction.
While his driver’s license was revoked as a result of the February 27, 2000 accident, Burke committed another OUI on August 6, 2000, this time with fatal consequences. Burke lost control of a car while driving home from a party at 5:30 a.m. He drove the car across the road, rolled it over several times and struck a tree. Burke’s passenger, Patrick Connolly, died later that day from injuries sustained in that accident. Burke was found by the police at the scene to be drunk. He was placed under arrest for OUI, second offense, operating a motor vehicle after his license had been revoked, speeding, and marked lanes violation. Burke was later indicted by a grand jury on multiple charges arising from the accident including manslaughter, motor vehicle homicide while under the influence of intoxicating liquor, OUI, second offense, and operating after his license was suspended.
On December 28, 2000, Burke pleaded guilty to manslaughter, OUI, second offense, and operating after his license was suspended. The other indictments were nolle pross’ed or filed. Burke was sentenced to two and one-half years in the House of Correction for each conviction and ordered to serve at least three years. The court also imposed probation which required Burke not to use alcohol or controlled substances, attend counseling, undergo random testing, and wait ten years before he could apply for a driver’s license reinstatement. In 2006 and 2009, Burke asked the court to modify the terms of his probation but the court denied both requests.
The record reflects that on January 3, 2001, an abstract was mailed to the Registry of Motor Vehicles (“Registry”). This was done pursuant to G.L.c. 90, §27. At the hearing before the Board, the Registrar stated that in 2001 the Registry received notice only that the motor vehicle homicide charge was nolle pross’ed, and that Burke was convicted of the OUI, second offense. In connection with this motion, however, Burke supplied a copy, certified by Norfolk Superior Court, of the January 3,2001 abstract. The abstract shows that the Registry was informed that Burke was convicted of motor vehicle manslaughter, as well as OUI, second offense and operating after a suspended license. The Registrar moved to strike the copy of the abstract on the ground that it was not submitted to the Board at the hearing. I allowed Burke to supplement the record with the copy of the abstract.
*466 On November 28, 2003, the Registrar informed Burke, in ■writing, of a revocation of his driver’s license. In the document, the Registrar referenced only the OUI and license suspension from the August 6, 2000 incident, and the earlier OUI from the February 27, 2000 incident. Burke’s conviction for manslaughter was not noted. Citing only the convictions described in the document, the Registrar revoked Burke’s driver’s license for two years.
On December 6, 2005, the Registrar notified Burke that he was now eligible to have his right to operate a motor vehicle reinstated.
According to the Registrar, she became aware of the manslaughter conviction arising from the August 6, 2000 accident on August 16, 2013. Burke contests that statement on the basis of the abstract from 2001 that he has now submitted, post-hearing before the Board, to the court. I find, based on the copy of the abstract, that the Registrar was notified of the manslaughter conviction in 2001. The Registrar’s letter of suspension dated November 28, 2003, suggests, however, that for some unexplained reason, the Registrar did not consider the manslaughter conviction at the time she revoked Burke’s license for two years on November 28, 2003.
When Burke applied for a driver’s license in August 2013, the Registrar sent Burke a letter, dated August 16, 2013, referencing Burke’s conviction for manslaughter. As a result of that conviction, the Registrar noted that “your license/right to operate a commercial motor vehicle is revoked for 15 years ...” Burke appealed the Registrar’s action. While the appeal was pending, the Registrar conducted a further investigation and review of Burke’s driving history and criminal record. Based on its review, the Registrar, on October 29, 2013, notified Burke that his license was revoked for his lifetime because of the manslaughter conviction. In addition, the Registrar notified Burke that another ground for his lifetime ban from obtaining a driver’s license was the Registrar’s determination that Burke was an immediate threat to public safely, under G.L.c. 90, §22(a), if he were to be given a driver’s license.
Burke’s appeal proceeded to a hearing before the Board on November 7, 2013. Following the hearing, at which Burke was represented by counsel, the Board affirmed the Registrar’s action. The Board noted that it reserved its right to supplement the statement of reasons for its affirmation if judicial review of its decision was sought. Burke commenced this action on December 9, 2013. On March 12, 2014, the Board issued a 23-page Statement of Reasons for Decision (“the Decision”). In the Decision, the Board concluded that Burke’s driving privileges should be revoked for his lifetime based upon the application of G.L.c. 90, §24(l)(c)(4), as it existed at the time of Burke’s conviction for OUI, second offense. In addition, the Board found that Burke’s license should be revoked for life because he was an immediate threat to public safety under G.L.c. 90, §22(a).
DISCUSSION
A. Standard of Review
■ Pursuant to G.L.c. 30A, § 14, the court must uphold the Board’s Decision unless the Decision is unsupported by substantial evidence, arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law. Registrar of Motor Vehicles v. Board of Appeal on Motor Vehicle Liability Policies and Bonds, 382 Mass. 580, 591 (1981). The court gives substantial deference to an agency’s interpretation of those statutes with which it is charged with enforcing. “Deference is particularly appropriate when the statute in question explicitly grants broad rule-making authority to the agency, contains an ambiguity or gap, or broadly sets out a legislative policy that must be interpreted by the agency.” Souza v. Registrar of Motor Vehicles, 462 Mass. 227, 229 (2012)’ (citations omitted). In addition, “(t)he court shall give due weight to the experience, technical competence and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” G.L.c. 30A, §14(7). As the party appealing the administrative decision, Burke, bears the burden of demonstrating the Decision’s invalidity. Marisme v. Board of Appeals on Motor Vehicle Liability Policies and Bonds, 27 Mass.App.Ct. 470, 474 (1989).
B. Challenges to the Board’s Decision
Burke’s several challenges to the Board’s decision may be put into three categories. First, the Board allegedly erred in the application of law to the facts of his case. Second, the Board’s Decision was not supported by substantial evidence. Third, the Board’s Decision was arbitrary and capricious. As described below, resolution of the first challenge — alleged error of law — provides the basis to reject all other challenges. That is because application of the statutory framework to the uncontested facts demonstrates that the Board had no choice but to revoke Burke’s privilege to obtain a driver’s license for his lifetime.
1. The Board properly imposed a lifetime revocation of Burke’s privilege to obtain a driver’s license.
The Legislature has, since 1939, consistently required the Registrar to revoke for life the license of anyone who kills another person with a motor vehicle during a second OUI. The statute relied upon by the Board for that conclusion is G.L.c. 90A, §24(l)(c)(4). That statute, as amended through 1982, reads as follows:
[N]o new license shall be issued or right to operate be reinstated by the registrar to any person convicted of a violation of [OUI] until ten years after the date of the conviction in case the registrar determines upon investigation and after hearing that the action of the person so convicted in committing *467 such offense caused an accident resulting in the death of another, nor at any time after a subsequent conviction of such an offense, whenever committed, in case the registrar determines in the manner aforesaid that the action of such person, in committing the offense of which he was so subsequently convicted, caused an accident resulting in the death of another.
The Board applied the above-referenced statute on the ground that it was in effect at the time of Burke’s conviction of the second OUI.
The Appeals Court in Stockman v. Board of Appeal on Motor Vehicle Liability Policies and Bonds, 62 Mass.App.Ct. 159, 161, further appellate review denied, 442 Mass. 1114 (2004), interpreted what it called the “elusive” language of this statute. ‘The correct reading, in our view, is that the words ‘subsequent conviction of such an offense’ refer to a previous conviction of violating §24(a)(l), that is to say, of driving while intoxicated.” Id. at 161. Further, “(f]or a lifetime revocation, the language calls for two convictions of driving while intoxicated, coupled with a determination by the registrar that the second commission of that offense (’the action of such person, in committing the offense of which he was so subsequently convicted’) caused a fatal accident.” Id. Accordingly, the application of the statute to the facts of Burke’s two convictions requires the Registrar to bar Burke for life from having a driver’s license.
Burke advances two arguments to avoid the legislative mandate that his license be revoked for Ufe. First, he correctly points out that in 2005 the Legislature deleted G.L.c. 90, §24(l)(c)(4) from the statutory scheme. Second, he argues that his “conviction” for OUI arising from the February 27, 2000 accident did not occur until after his conviction for the fatal OUI.
The answer to Burke’s first argument is that at aU times the Legislature has consistently mandated lifetime revocation of a driver’s Ucense after a second OUI that caused a death. As described by the Supreme Judicial Court in Commonwealth v. Maloney, 447 Mass. 577, 584 (2006), the deletion of §24(l)(c)(4) by the 2005 statute, known as Melanie’s Law, St. 2005, c. 122, §6A, was “an apparent clerical error.” The Court held “[w]here, as here, a statute contains an obvious clerical error, a court may depart from the statute’s Uteral meaning in order to effectuate legislative intent . . . Accordingly, we read §6A of Melanie’s Law as replacing G.L.c. 90, §24(4), not §24(l)(c)(4).” Id.
Moreover, Melanie’s Law, itself, repeated the legislative mandate of a lifetime revocation for a second OUI causing the death of another. Statute 2005, c. 122, §17 created what is now codified at G.L.c. 90, §24R which requires the Registrar to revoke for Ufe the Ucense or right to operate of a person convicted of OUI causing the death of another, foUowing a previous conviction. So at afi times, since 1939, the legislative mandate has been in place and has been consistent. There was not a gap in time where Burke could argue that the Legislature did not mandate lifetime revocation.
As a result, the Board’s Decision is correct as a matter of law whether from the appUcation of G.L.c. 90, §24(l)(c)(4) or §24R.[1] The Registrar and the Board had no discretion. The statutes required lifetime revocation of Burke’s driver’s Ucense.
As a second argument, Burke points to the fact that his conviction for the earUer OUI (from the February 27, 2000 accident) was not entered until January 11, 2001, a date after his December 28, 2000 conviction for the August 6, 2000 accident. Thus, he argues, the conviction for manslaughter by OUI on December 28, 2000 was not a “subsequent conviction.” This argument fails for several reasons. Burke’s plea of guilty on December 28, 2000 was to “OUI, second offense.” This necessarily required an admission to a previous conviction for the February 27, 2000 incident. In addition, the CWOF entered for that first offense was vacated and replaced with a conviction as of the date that the admission to sufficient facts and CWOF was entered (May 1, 2000). A CWOF is the functional equivalent of a guilty plea. “Failure to comply with the conditions does not require the matter to be relitigated, because the defendant has already admitted to facts sufficient to prove guilt. A guilty verdict enters upon proof of failing to comply with the conditions, and the defendant is sentenced as if a guilty verdict had originally entered.” Commonwealth v. Berrios, 84 Mass.App.Ct. 521, 526 (2013). See also, Paquette v. Board of Appeals on Motor Vehicle Liability Policies and Bonds, Hampden Superior Court (Moriarty, J.), CA No. 10-909 (2011) (found at p. 127 of the Administrative Record) (holding that violation of probation imposed on a CWOF caused a replacement of the CWOF with a conviction that qualified as a prior conviction for purposes of G.L.c. 90, §24{l)(c)(4)).[2] Finally, Burke’s argument flies in the face of the interpretation of the statute (G.L.c. 90, §24(l)(c)(4)) as articulated in Stockman. There, the Appeals Court focused, logically, on when the second, fatal OUI accident was committed. When the second, fatal OUI occurred after the “offense” of the first OUI, the statute prescribes a lifetime revocation. Stockman, 59 Mass.App. at 161. Given the manifest purpose of the statute (to remove from the road a person who causes a death by an OUI after the commission of an earlier OUI), the Stockman interpretation make sense.
Because the Board was correct as a matter of law to impose a lifetime revocation of Burke’s right to a driver’s license, it is unnecessary to decide whether the Board correctly applied G.L.c. 90, §22(a), allowing revocation where the license holder gives the Registrar reason to believe that continuing operation of a motor vehicle will constitute an immediate threat to the public safety.
*468 2. Burke’s remaining arguments fail.
Burke’s principal argument for the Board’s action to be found arbitrary, capricious and a violation of law is based upon the fact that the Registrar did not impose the lifetime revocation of his license, until October 2013, almost thirteen years after Burke’s conviction for the second OUI which caused the death of another person. In those thirteen years, the Registrar also issued at least two, if not three, inconsistent statements about Burke’s suspension or revocation as a result of the August 6, 2000 accident. In November 2003, the Registrar suspended Burke’s license for two years, and then in 2005, invited him to apply for a license. In August 2013, the Registrar suspended Burke’s license for fifteen years. Burke contends that such inconsistency and delay is necessarily arbitrary and capricious conduct. In addition, Burke contends that the Registrar and the Board are legally bound to abide by the Registrar’s earlier decisions of suspensions for less than a lifetime.
The Registrar does not explain why she issued the two-year suspension in November 2003, other than to suggest that the Registry was unaware of the manslaughter conviction. The certified copy of the abstract from Norfolk Superior Court proves that someone at the Registry knew or should have known of the manslaughter conviction in November 2003. While the error by the Registrar is unfortunate to the extent it might have raised Burke’s hopes to someday obtain a license, there was no prejudice to Burke as a result of the error. Under the terms of Burke’s probation, he could not apply for a license in any event until 2013. Given that the Registrar was mandated, at all relevant times, to impose a lifetime ban on Burke’s driver’s license, there was never a time that Burke was entitled to drive. Getting the issue correctly decided, as the Registrar finally did in August 2013, was not arbitrary or capricious. Just the opposite, the Decision was getting it right.[3] Also, the Registrar and the Board did not exceed their authority in imposing the lifetime ban because a lifetime revocation carries no outer limit that could be violated by the Registrar’s delay. See, in contrast, Flatley v. Board of Motor Vehicles Liability Policies and Bonds, 13 Mass. L. Rptr. 432 (2001) (Brassard, J.) (Registrar’s seven-year delay to impose a ten-year revocation exceeded her authority because the statute allowed revocation only for ten years “after the date of conviction”). In sum, because the lifetime prohibition of a driver’s license was mandatory, the Board’s Decision must be affirmed. For the same reason, Burke’s claims of procedural deficiencies in the hearing before the Board fail to suggest that the Board could reach any other conclusion than the one it did.
CONCLUSION
Joseph Burke’s Motion for Judgment on the Pleadings is DENIED. The Decision of the Board is AFFIRMED, and this action is DISMISSED.

The Board also argues that G.L.c. 90, §24{l)(c)(4) maybe applied to Burke’s OUI, second, even if it was repealed in 2005. Defendant’s Opposition to Plaintiffs Motion Under Mass.R.Civ.P. 12c, at pp.10-12. I agree with the Board’s argument, thus providing another reason to conclude that the Board did not err, as a matter of law. The Board was required to impose a lifetime revocation.

Souza v. Registrar of Motor Vehicles, 462 Mass. 227, 228 (2012), is not to the contrary. There, a CWOF, with probationary terms, was not violated. The Court held that, in those circumstances, the CWOF was not a “conviction” for purposes of G.L.c. 90, §24. In the present case, the CWOF was violated so Burke’s guilt with respect to the CWOF charges was established. “We conclude that as used in the statute, ‘convicted’ references only dispositions of criminal charges that include a determination of guilt.” Id.

Burke cites cases for the proposition that an administrative agency, after an adjudicatory proceeding, may not arbitrarily change its decision. That did not happen here. The only adjudicatory proceeding was the hearing before the Board that produced the Decision which is the subject of this appeal. There has been no change of that Decision. The Registrar’s corrections of its own errors with respect to issuing a suspension or revocation is within its authority. Olmstead v. Dept. of Telecommunications and Cable, 466 Mass. 582, 584 n.5 (2013).