NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-117                                        Appeals Court

JOSEPH L. BURKE  vs.  BOARD OF APPEAL ON MOTOR VEHICLE LIABILITY POLICIES AND BONDS & another.[1]


No. 15-P-117.

Suffolk.     March 16, 2016. - September 12, 2016.

Present:  Cohen, Katzmann, & Blake, JJ.


Board of Appeal on Motor Vehicle Liability Policies and Bonds. Motor Vehicle, Board of Appeal on Motor Vehicle Liability Policies and Bonds, Operating under the influence, License to operate, Homicide. License. Registrar of Motor Vehicles, Revocation of license to operate. Administrative Law, Agency's interpretation of statute. Statute, Construction, Retroactive application.



Civil action commenced in the Superior Court Department on December 9, 2013.

The case was heard by Edward P. Leibensperger, J., on a motion for judgment on the pleadings, and a motion for reconsideration was considered by him.


Brian K. Wells for the plaintiff.
David R. Marks, Assistant Attorney General, for the defendants.

_____

[1] Registry of Motor Vehicles.

KATZMANN, J.  In this appeal, we are again asked to consider whether a lifetime suspension is appropriate for a driver who, after having committed an operating under the influence (OUI) offense, causes a fatality in the course of a second OUI offense.  Plaintiff Joseph Burke appeals from a judgment of the Superior Court upholding a decision of the defendant Board of Appeal on Motor Vehicle Liability Policies and Bonds (Board) that affirmed the denial by the Registrar of Motor Vehicles (registrar) of Burke's application for reinstatement of his driver's license pursuant to G. L. c. 90, § 24(1)(c)(4), as amended through St. 1982, c. 373, § 4, as well as the registrar's permanent revocation of that license, on the basis that Burke's second drunk driving offense resulted in a fatality.[2]  We affirm.

Background.  On February 27, 2000, Burke, was arrested for OUI after a motor vehicle accident in Rehoboth.  On May 1, 2000, Burke admitted to sufficient facts for a finding of guilty of OUI in connection with the February incident but received the benefit of a continuance without a finding of guilty (CWOF) for one year until May 1, 2001, during which time he was placed on

---

[2] Burke brought his action in Superior Court pursuant to G. L. c. 30A, § 14, and then moved for judgment on the pleadings, which was denied.  The judge also denied Burke's motion for reconsideration.

probation. The terms of his probation included a 180-day loss of license and an assignment to an alcohol education program.

On August 6, 2000, while still on probation with his license suspended as a result of the incident the previous February, Burke drove a motor vehicle when intoxicated, and was responsible for a motor vehicle accident in Milton in which his passenger, Patrick Connolly, sustained fatal injuries.[3] On December 28, 2000, Burke pleaded guilty to manslaughter; OUI, second offense; and operating after his license had been suspended for OUI in connection with the fatal accident in August, 2000. As part of the probationary portion of his sentence, Burke was required to wait ten years after his release from incarceration before he could apply to have his license reinstated.

On January 11, 2001, after his guilty plea in the fatal accident, the CWOF on Burke's prior offense was revoked and a guilty conviction and sentence were imposed.

---

[3] As found by the board, Burke lost control of the motor vehicle while driving home from a party; the car traveled across northbound and southbound lanes of a Milton road, left the road, rolled over several times, and struck a tree and numerous boulders before stopping. Shortly after the accident, the police "observed that Burke's speech was slurred, his eyes were red and glassy, and there was a strong odor of alcohol emanating from his breath. Burke stated that he was drunk and that the officer needed to arrest him." The police report stated that the ethyl alcohol level was 215, which converted to 0.18% blood alcohol content.

Burke applied to have his driver's license reinstated in August, 2013. Burke was initially notified that his license had been revoked for fifteen years. After Burke appealed the fifteen-year revocation, and pursuant to further review of his file by the Registry of Motor Vehicles (RMV), the registrar ultimately notified Burke that he was subject to a lifetime revocation because of his manslaughter conviction. The board affirmed, finding after a November 7, 2013, hearing "that the [r]egistrar's order revoking Burke's license for life for a conviction of manslaughter in which alcohol was involved, with a prior [OUI] conviction is legal and proper, the statute does not contain a statutory provision for granting a hardship and it is not appropriate to terminate the license revocation."[4]

Discussion. Burke raises a number of arguments on appeal that can be broadly placed into two categories. The first is that the proper construction of G. L. c. 90, § 24(1)(c)(4), provides for only a ten-year license suspension to be imposed on a driver's first fatal drunk driving accident regardless of whether that driver was previously convicted of OUI and that a driver must have been involved in two separate OUIs with a

---

[4] The board did "credit[] Burke's testimony that he is now sober and a changed man. He expressed remorse for his actions. He has strong family support. However, . . . [a] multiple-[OUI] offender who caused the death of someone while operating under the influence of liquor is a significant threat to public safety."

fatality before becoming subject to lifetime license revocation.

Second, he raises a number of arguments challenging the

application of § 24(1)(c)(4) in his case.

1. Standard of review. "Appellate review under G. L.

c. 30A, § 14, is limited to determining whether the agency's

decision was unsupported by substantial evidence, arbitrary and

capricious, or otherwise based on an error of law." Haverhill

Ret. Sys. v. Contributory Ret. Appeal Bd., 82 Mass. App. Ct.

129, 131 (2012) (quotation and citation omitted). However, we

review questions of statutory interpretation de novo, giving

substantial deference to a reasonable interpretation of a

statute by the administrative agency charged with its

administration and enforcement. Anawan Ins. Agency, Inc. v.

Division of Ins., 459 Mass. 592, 596 (2011). As the party

challenging an agency decision under G. L. c. 30A, § 14, Burke

has the burden of proof to demonstrate the invalidity of the

administrative determination. Scheffler v. Board of Appeal on

Motor Vehicle Liab. Policies & Bonds, 84 Mass. App. Ct. 904, 906

(2013).

2. Statutory interpretation. Burke contends that a proper

analysis of the statute and its history compels the conclusion

that a lifetime suspension under § 24(1)(c)(4)[5] requires two

---

[5] Section 24(1)(c)(4) provides: "[N]o new license shall be issued or right to operate be reinstated by the registrar to any

fatal accidents and that the board erroneously interpreted the statute to impose a lifetime suspension where a second OUI offense resulted in a fatality but no prior OUI offense did. "Because the interpretive question here is purely a legal one, and because the duty of statutory interpretation rests ultimately with the courts, we review the board's interpretation de novo." Souza v. Registrar of Motor Vehicles, 462 Mass. 227, 229-230 (2012) (Souza) (citation, quotation marks, and textual alteration omitted). In Stockman v. Board of Appeal on Motor Vehicle Liab. Policies & Bonds, 62 Mass. App. Ct. 159, 161 (2004) (Stockman), we rejected the very same argument made by Burke here. Stockman is indistinguishable and controlling.[6]

---

person convicted of a violation of subparagraph (1) of paragraph (a) until ten years after the date of conviction in case the registrar determines upon investigation and after hearing that the action of the person so convicted in committing such offense caused an accident resulting in the death of another, nor at any time after a subsequent conviction of such an offense, whenever committed, in case the registrar determines in the manner aforesaid that the action of such person, in committing the offense of which he was so subsequently convicted, caused an accident resulting in the death of another."

[6] Burke relies on various historical materials that discuss § 24(1)(c)(4). However, the construction in Stockman is based on the clear and unambiguous text of the statute. Furthermore, the bulk of Burke's materials simply indicates that the Legislature had considered, but ultimately decided against, a lifetime revocation for even a first-time OUI offender who causes a fatality. These materials are not inconsistent with a determination that a lifetime suspension is appropriate for a driver who, after having committed an OUI, causes a fatality in the course of a second OUI offense.

3.  Application of lifetime revocation to Burke.  Having concluded that the registrar's interpretation of § 24(1)(c)(4) is correct, the question remains whether there was error in its application to Burke.  In this regard, Burke contends that he is not subject to the lifetime revocation because the CWOF on his first OUI offense that was still in effect when he was convicted in connection with the fatal accident is not a sufficient predicate conviction, that the board's actions constituted impermissible retroactive application of a harsher interpretation of § 24(1)(c)(4), that the thirteen-year delay and repudiation of previous notices violates his due process rights, and that he detrimentally relied on indications that his suspension would not exceed ten years.

a.  Predicate conviction.  In his complaint and the proceedings below, Burke contended that § 24(l)(c)(4) had been repealed by "Melanie's Law" (enacted to protect the public from drunk drivers) and that the board had improperly applied a repealed statute to him that was no longer in effect.  In rejecting this claim, the motion judge cited Commonwealth v. Maloney, 447 Mass. 577, 584 (2006) (Maloney), for the proposition that the deletion of § 24(l)(c)(4) by the 2005 statute known as Melanie's Law, St. 2005, c. 122, § 6A, was "an apparent clerical error" and that courts will accordingly "read § 6A of Melanie's Law as replacing G. L. c. 90, § 24(4), not

§ 24(1)(c)(4)."[7]  On appeal, Burke does not quarrel with this reasoning or otherwise press his argument that the Legislature inadvertently deleted or repealed § 24(1)(c)(4) when it enacted Melanie's Law in 2005.  We thus proceed with the understanding that § 24(1)(c)(4) continues in effect.[8]

As he did below, Burke notes on appeal that his conviction for the earlier OUI (from the February 27, 2000, accident) was not entered until January 11, 2001, when the CWOF was vacated and replaced with a conviction.[9]  Because his conviction was

---

[7] In Maloney, supra at 584, the Supreme Judicial Court stated:  "[D]ue to an apparent clerical error, St. 2005, c. 122, § 6A, states that it replaces G. L. c. 90, § 24(1)(c)(4), a completely different provision of the statute concerning the reinstatement of licenses by the registrar of motor vehicles, rather than G. L. c. 90, § 24(4)," which was a provision governing proof of prior OUI convictions.  "Where, as here, a statute contains an obvious clerical error, a court may depart from the statute's literal meaning in order to effectuate legislative intent.  Accordingly, we read § 6A of Melanie's Law as replacing G. L. c. 90, § 24(4), not [G. L. c. 90,] § 24(1)(c)(4)."  Ibid. (declining to "infer the Legislature's ratification of this error from the mere fact that it has yet to be corrected") (citations omitted).

[8] The question posed in the case before us with respect to § 24(1)(c)(4) is not precisely the same as that addressed in Maloney as, inter alia, here the "apparent clerical error" completely deleted the text of the provision at issue from the books as opposed to leaving two somewhat conflicting versions of the same provision.  See Maloney, supra at 584.

[9] In Commonwealth v. Doe, 473 Mass. 76, 81-82 (2015), the Supreme Judicial Court explained the progression from CWOF to conviction thusly:

"'An admission to sufficient facts followed by a continuance without a finding is not a "conviction"

entered after his December 28, 2000, manslaughter conviction for the fatal August 6, 2000, accident, he contends on appeal, as he did below, that the conviction for manslaughter by OUI was not a "subsequent conviction" for the purposes of § 24(1)(c)(4), and that the board erred in imposing a lifetime revocation of his driver's license. In his thoughtful memorandum, the motion judge agreed with the board's rejection of this claim, noting, inter alia, that where, consistent with Stockman, supra, the manifest purpose of the statute is to remove from the road a person who causes a death by an OUI after the commission of an earlier OUI, Burke's interpretation contravenes the Legislature's goal and is unreasonable. We need not resolve this argument because we determine that at the time of his

under Massachusetts law.' Commonwealth v. Villalobos, 437 Mass. 797, 802 (2002). Rather, where a judge continues a case without a finding, a guilty finding is not entered and the case is 'continued without a finding to a specific date thereupon to be dismissed, such continuance conditioned upon compliance with specific terms and conditions or that the defendant be placed on probation.' G. L. c. 278, § 18. See Commonwealth v. Mosher, 455 Mass. 811, 822 (2010) ('A continuance without a finding closely resembles a sentence of straight probation, except that the former is not a "conviction" under State law if the defendant successfully completes the period of probation or complies with the terms and conditions set by a judge'). Although a judge may enter a guilty finding in a case continued without a finding after a defendant fails to comply with the terms of probation, a person charged with a[n]. . . offense and granted a continuance without a finding is not convicted of the . . . offense unless and until there is such a guilty finding."

application in 2013 for reinstatement of his license, the board was required to impose a lifetime revocation.

Pertinent to our analysis of Burke's claims is that § 24(1)(c)(4) was effectively modified by St. 2012, c. 139, § 98, which, after the opinion in the Souza case, supra, added the words "or admits to a finding of sufficient facts" into the definition of "convicted" in G. L. c. 90, § 24(1)(d). As a result, the admission to sufficient facts that Burke made in connection with the CWOF he initially received for his first OUI offense, which had not yet been converted into a guilty finding at the time of his conviction on the second OUI offense, is now, for purposes of § 24(1)(c)(4), a "conviction" -- and properly could be so classified at the time of Burke's application for reinstatement in 2013. Compare Souza, 462 Mass. at 230-235 (prior to the 2012 amendments, an admission to sufficient facts followed by a CWOF was not a "conviction" under § 24[1][d], which defines the term "convicted" for purposes of all the subsections of § 24[1]).

b. Retroactive application. The "purpose [of license revocation] is to protect the public from future harm by depriving the unsafe or irresponsible driver of his or her authority to continue to operate a motor vehicle. Because its main purpose is public safety rather than punishment, revocation of a driver's license is properly characterized as nonpunitive."

<u>Luk</u> v. <u>Commonwealth</u>, 421 Mass. 415, 426-427 (1995) (<u>Luk</u>).  See <u>Powers</u> v. <u>Commonwealth</u>, 426 Mass. 534, 540 (1998) (<u>Powers</u>) (board's "administrative license suspension and revocation sanctions under G. L. c. 90 are nonpunitive").  When Burke sought reinstatement of his license in 2013, the registrar was obligated to apply the statute as it was in effect at the time Burke made his request.  Application of the statute in this manner does not raise ex post facto concerns, as "civil remedies are not subject to the prohibition against ex post facto laws" and "the Supreme Judicial Court, on numerous occasions, has ruled that statutes imposing conditions on eligibility for continued licensure are remedial and nonpunitive in nature." <u>Gordon</u> v. <u>Registry of Motor Vehicles</u>, 75 Mass. App. Ct. 47, 50, 51-52 (2009) (<u>Gordon</u>).  In short, where § 24(1)(<u>c</u>)(4) remains in force, there is no question here of retroactive application of that statute by the board.  The application was contemporaneous, triggered by Burke's request for reinstatement of his right to operate.  Cf. <u>Gordon</u>, <u>supra</u> at 56 (application of an ignition interlock requirement enacted subsequent to the plaintiff's convictions that made him subject to the requirement "was not retroactive as the event triggering the requirement was [plaintiff's] decision to seek the reinstatement of his license, which occurred after the statute went into effect, and not his prior OUI conviction").  Section 24(1)(<u>c</u>)(4) is a prohibition on

the issuance of new licenses and the reinstatement of the right to operate by the registrar. While the registrar can act proactively to notify drivers of lifetime revocations under the statute prior to the motorist taking affirmative steps for reinstatement, it is apparent that an application for a license or reinstatement of a right to operate requires the registrar to act at that time to determine whether she shall or shall not grant the request. In sum, at the time of Burke's application for reinstatement in 2013, the registrar was required to impose the lifetime revocation in accordance with Stockman's interpretation of the statute and the 2012 amendment to § 24(1)(d).[10]

c. Due process and detrimental reliance. On November 28, 2003, the registrar notified Burke in writing that his driver's license was being revoked for two years as a result of (1) OUI on August 6, 2000; (2) driving on a suspended license on August, 6, 2000; and (3) the OUI offense he committed in February, 2000, for which he received a CWOF and was assigned to an alcohol program. Burke's conviction of manslaughter was not noted. On

---

[10] There is also no merit to Burke's contention that the registrar's interpretation of § 24(1)(c)(4) has become more harsh since his conviction. Even prior to Burke's fatal accident, the registrar imposed lifetime suspensions for similarly situated drivers. See, e.g., Callahan v. Board of Appeal on Motor Vehicle Liab. Policies & Bonds, 90 Mass. App. Ct.    (2016) (lifetime suspension under § 24[1][c][4] imposed in June, 1999, where the driver was twice convicted of OUI and a second OUI resulted in a fatality).

December 6, 2005, the registrar notified Burke that he was now eligible to have his right to operate a motor vehicle reinstated. Burke claims that he detrimentally relied on these previous communications from the RMV and the terms of his plea agreement (requiring him to wait only the ten years of his probationary term before applying to have his license reinstated) in developing the settled expectation that he would be eligible to drive again after those ten years had elapsed. In the context of that detrimental reliance, Burke claims he was prejudiced by the registrar's delay in implementing the lifetime revocation.

But Burke cannot show that the delay between the incident and the lifetime suspension in 2013 actually unfairly prejudiced him. His license was already suspended when he caused the fatal accident in August, 2000, and remained suspended for various reasons until August, 2013. Because the terms of § 24(1)(c)(4) are mandatory, the registrar could not have lawfully reinstated Burke's license in 2013. Burke's unsettled expectations[11] cannot change the registrar's statutory obligation to impose the

---

[11] We note that, based on the brief duration of the suspension (two years) and the absence of any reference to manslaughter or homicide charges in the 2003 notice, Burke either knew or should have known that a mistake had been made and that the suspension he received then, which expired in 2005, did not reflect the fatality his drunk driving had caused.

lifetime suspension at the time that Burke applied for reinstatement.

For this same reason, Burke also cannot show that the registrar acted arbitrarily or capriciously or violated his substantive due process rights. "Substantive due process prohibits the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." Gordon, supra at 55 (quotations and citations omitted). See also Rumford Pharmacy, Inc. v. East Providence, 970 F.2d 996, 1000 n.8 (1st Cir. 1992) ("A complaint pleads a substantive due process violation by a local administrative agency only if the facts alleged are shocking or violative of universal standards of decency" [quotation and citation omitted]). In addition, because the deprivation of a driver's license implicates no fundamental rights, the due process inquiry is relaxed. Gordon, supra at 55. "In Massachusetts, one's right to operate a motor vehicle is a privilege voluntarily granted. Continued possession of this privilege is conditioned on obedience to the Legislature's comprehensive regulatory scheme aimed at regulating the motorways and keeping them safe." Luk, 421 Mass. at 423 (citation omitted). The board's compliance with the Legislature's comprehensive regulatory scheme cannot be

considered arbitrary or capricious, and it certainly does not shock the conscience.

Although Burke does not characterize them as such, many of his arguments essentially seek to estop the registrar from departing from the promises Burke believes were implied in his plea agreement and the 2003 and 2005 notifications. These arguments fail. "Generally, the principles of estoppel are not applicable against the government in connection with its exercise of public duties, particularly when the government is acting in the public interest and safety, as its duly constituted officials see that interest. . . . Governmental officials need to be free to act in accordance with their constitutional and statutory authority in such manner as they think is in the public interest without encumbrance from earlier collateral decisions which may have suggested a different tendency so far as the public issue is concerned." Municipal Light Co. of Ashburnham v. Commonwealth, 34 Mass. App. Ct. 162, 167, cert. denied, 510 U.S. 866 (1993). For the reasons we have stated, the registrar here was acting pursuant to her statutory mandate and in the public interest and safety.

Burke has also failed to show that anything in his plea agreement would preclude the lifetime revocation of his license. In Commonwealth v. Cruz, 62 Mass. App. Ct. 610 (2004), we found that even "[p]utting aside the settled proposition that

Massachusetts courts are reluctant to apply equitable estoppel against the Commonwealth," the Commonwealth's pursuit of civil commitment for a convicted sex offender was not a breach of the offender's plea agreement where the agreement did not expressly prohibit such proceedings subsequent to the offender's completion of his sentence and, inter alia, "civil commitment is a collateral consequence of a criminal conviction which need not be addressed at the plea hearing in order for the plea to be valid." Id. at 613. Similar reasoning applies to the collateral consequence of the registrar's revocation of Burke's driving privilege here where, as has been noted, it is established that "administrative license suspension and revocation sanctions under G. L. c. 90 are nonpunitive." Powers, 426 Mass. at 540. In rejecting the double jeopardy challenge in Powers, the Supreme Judicial Court made it clear that license revocations by the registrar are independent of the criminal charges pursued by the Commonwealth for the same incident.

Finally, Burke has also failed to make out a violation of his procedural due process rights. See Gillespie v. Northampton, 460 Mass. 148, 156-158 (2011).

Conclusion. Where the statutory construction applied by the board was not only reasonable but required by our case law and was applied contemporaneously with his application for

reinstatement, Burke cannot meet his burden of demonstrating the invalidity of the administrative determination.

<u>Judgment affirmed</u>.